Ronald E. GRAFFAM, et al., Plaintiffs,

v.

SCOTT PAPER COMPANY,
et al., Defendants.

Civ. No. 93–64–P–C.

United States District Court,
D. Maine.

April 4, 1994.

Daniel W. Bates, James B. Haddow, Kenneth D. Keating, Petruccelli & Martin, Francis Jackson, Portland, ME, for plaintiffs.

Ray R. Pallas, Pallas & Waldron, Westbrook, ME, for plaintiff Richard W. Woods.

William J. Kayatta Jr., S. Mason Pratt, B. Simeon Goldstein, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, for defendants.

*MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT* [1]

GENE CARTER, Chief Judge.

This is an action for age discrimination brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634 (1985 & Pamph.1993) [2],

---

1. After hearing oral argument and a careful review of the record, the Court denied Plaintiffs' Motion for Partial Summary Judgment on February 25, 1994, (Docket No. 83) indicating on the record that its supporting Memorandum of Decision would be filed in due course. This Memorandum of Decision sets forth the reasons for the denial. Although the Court has since heard the evidence at trial, this decision is confined to the motion record before trial.

2. The Age Discrimination in Employment Act provides in pertinent part:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportu-

and the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. §§ 4551–4633 (1989 & Supp.1993) [3], by eleven former salaried employees of Scott Paper Company's S.D. Warren paper mill in Westbrook, Maine. The matter before the Court is Plaintiffs' Motion for Partial Summary Judgment (Docket No. 73) on the remaining counts of the Complaint. The remaining counts allege violations of the MHRA (Count I) and the ADEA (Count VI) based on the "disparate impact" theory of analysis.[4]

## I. FACTS

In October of 1990, S.D. Warren Company decided to reduce the number of salaried employees at the Westbrook mill. This decision was brought about, at least in part, by the Company's decision to sell the mill and its desire to make the mill more attractive to potential buyers. Affidavit of Gary A. Parafinczuk (Docket No. 22) ¶ 5. S.D. Warren determined that it should be possible to increase productivity by effecting a 20–25% reduction in the number of salaried employees at the mill. Parafinczuk Affidavit ¶¶ 4, 11.

S.D. Warren determined which employees would be let go based on individual employee evaluations. Parafinczuk Affidavit ¶ 12. The assessment process used to evaluate each employee was developed by the S.D. Warren Mill Leadership Team ("MLT"), which was made up of the heads of several departments, along with the mill manager. Parafinczuk Affidavit ¶ 7. First, each department head divided the jobs in his department—including those to be eliminated—into "job groups." Parafinczuk Affidavit ¶ 13. Each job group was composed of jobs that required the same or similar skills on the part of the employees performing those jobs. Parafinczuk Affidavit ¶ 13.

After these initial steps were taken, Plaintiffs were evaluated by a team of co-workers using six subjective factors and one objective factor.[5] Parafinczuk Affidavit ¶ 14–15. No single person or group graded all employees. Parafinczuk Affidavit ¶ 20. A final rating was developed for each employee by members of the respective department's evaluation team. Parafinczuk Affidavit ¶ 15. Employees selected for termination were those with the lowest scores in their job group. Parafinczuk Affidavit ¶ 15.

All Plaintiffs were at least fifty years of age as of March 13, 1991, and they were discharged from their employment at the mill on that date. The downsizing process resulted in an overall rate of retention of 61.5% of employees aged fifty and older, and an overall rate of retention of 91.5% of employees under fifty. Affidavit of Rosemary Roberts submitted in support of Plaintiffs' Class Certification Memorandum filed in 93–65–P–C (Docket No. 17) ¶ 4. Plaintiffs' statistical expert has calculated that this result differs from the result expected in a truly neutral selection process by 7.1 standard deviations. Roberts Affidavit ¶ 9.

## II. DISCUSSION

A motion for summary judgment must be granted if "[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court of Appeals

nities or otherwise adversely affect his status as an employee, because of such individual's age.

29 U.S.C. § 623(a)(1) & (2).

3. The Maine Human Rights Act provides in pertinent part:

> 1. Unlawful employment. It is unlawful employment discrimination, in violation of this Act, except when based on a bona fide occupational qualification:
>
> A. For any employer to fail or refuse to hire or otherwise discriminate against any applicant for employment because of … age….

5 M.R.S.A. § 4572(1) (footnote omitted).

4. The Court had already decided that the "disparate impact" theory of analysis applies to an ADEA case. Memorandum of Decision and Order Denying Defendants' Motion for Partial Summary Judgment in 93–65–P–C (Docket No. 42) at 6–12.

5. The subjective factors used by the evaluation teams were: job skills; leading change skills; interpersonal skills; self-management; performance; and versatility. The only objective factor was length of service.

for the First Circuit has aptly articulated the legal standard to be applied in deciding motions for summary judgment:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial' *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or significantly probative, summary judgment may be granted.

*Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

*Brennan v. Hendrigan,* 888 F.2d 189, 191–92 (1st Cir.1989).

Plaintiffs contend that they have made out a *prima facie* case of age discrimination by use of statistics and that Defendants have "no competent evidence ... to oppose the Plaintiffs' statistical showing" that employees age 50 and older suffered from the disparate impact of age discrimination. Plaintiffs' Motion for Partial Summary Judgment at 6. As an initial matter, however, the Court must address whether the subgroup of persons age 50 and older is a proper statistical basis to support a disparate impact claim under the ADEA.

Defendants insist that the only permissible way to show disparate impact is to look at statistical differences based on the entire statutorily protected class—those 40 and older. The subgroup of those individuals 50 years of age and older, Defendants argue, is an inappropriate basis for statistical comparison.

### A. Age Discrimination in Employment Act Claim

The Court of Appeals for the Second Circuit is the only court that has squarely addressed this issue. *See Lowe v. Commack Union Free School Dist.,* 886 F.2d 1364, 1372–73 (2d Cir.1989), *cert. denied,* 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). *See also Kennel v. Dover Garage, Inc.,* 816 F.Supp. 178, 191 (E.D.N.Y.) (following *Lowe* ), *aff'd without opinion,* 9 F.3d 1536 (2d Cir.1993); *Frank v. Capital Cities Communications, Inc.,* 1991 WL 60280, 60 Empl. Prac.Dec. ¶ 42,035 (S.D.N.Y. Apr. 9, 1991) (following *Lowe* ), *motion for reconsideration denied,* 1991 WL 173020, 57 Empl.Prac.Dec. ¶ 41,127 (S.D.N.Y. Aug. 29, 1991). *But see Klein v. Secretary of Transp.,* 807 F.Supp. 1517, 1524 (E.D.Wash.1992) (no apparent challenge to plaintiff's use of statistical evidence showing discrimination against subgroup of individuals 50 and older); *EEOC v. Borden's Inc.,* 551 F.Supp. 1095, 1098–99 (D.Ariz.1982) (no apparent challenge to plaintiff's use of statistical evidence showing discrimination against subgroup of individuals over 55). In *Lowe,* plaintiffs sought to establish a *prima facie* case of age discrimination by comparing the effect of defendant's hiring procedures on candidates over 50 with the effect on candidates under 50. The Second Circuit rejected this approach, reasoning that "[i]n recognizing the disparate impact approach of demonstrating discrimination, the Supreme Court generally has focused not on the individual plaintiff as much as on the

adverse effect of the challenged practice *on the protected group* of which the plaintiff is a member." *Id.* at 1373. In addition, the court offered a hypothetical to support its rejection of the use of subgroups. "If appellants' approach were to be followed, an 85 year old plaintiff could seek to prove a discrimination claim by showing that a hiring practice caused a disparate impact on the 'subgroup' of those age 85 and above, even though all those hired were in their late seventies." *Id.* This hypothetical led to the conclusion that "such a 'disparity' would [not] support the inference of discrimination that the disparate impact approach permits when those outside a statutorily protected group are preferred over those included in that group." *Id.*

This Court fundamentally disagrees with the approach taken by the Second Circuit in *Lowe.* The ADEA protects *individuals* against age discrimination. 29 U.S.C. § 631(a) (Pamph.1993) ("*individuals* who are at least 40 years of age" are protected by the ADEA) (emphasis added); 29 U.S.C. § 623(a) ("It shall be unlawful for an employer (1) ... to discharge *any individual* or otherwise discriminate against *any individual* with respect to his ... privileges of employment, because of such individual's age; [or] (2) to limit, segregate or classify his

employees in any way which would deprive or tend to deprive *any individual* of employment opportunities....") (emphasis added). The basic policy of the ADEA requires a focus on fairness to individuals rather than fairness to groups. *Lowe,* by ignoring the individuals that make up the statutory group, deprives older individuals of the protection from discrimination that the Act is meant to provide. The effect of the statute should not be diluted because discrimination adversely affects only part of the protected group.[6]

 Of more concern to this Court than *Lowe*'s unlikely hypothetical is the very real possibility that refusing to permit subgrouping for ADEA disparate impact claims will undermine the purposes of the Act. For example, if subgrouping is not permitted, an employer could adopt policies which, though facially neutral, have a disparate impact on workers over 50 (*or approaching retirement*). These policies could be effectively insulated from review if younger employees within the protected class had received favorable treatment. A rule barring subgrouping in ADEA disparate impact cases would thus permit policies and practices that clearly have an adverse impact on individuals based on their age to escape judicial scrutiny.[7] The

---

6. The Court notes that the limits of statistical analysis will render disparate impact cases impossible to prove where subgroups are too small to obtain reliable statistical results. *See, e.g., Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); *Massarsky v. General Motors Corp.,* 706 F.2d 111, 121 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983) ("An adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact.") (citations omitted). Moreover, "where the difference in age is slight, the district court might well 'find the evidence was insufficient to permit an inference of discrimination.'" *Lowe,* 886 F.2d at 1380 (Pierce, J., concurring) (quoting *Maxfield v. Sinclair International,* 766 F.2d 788, 793 (3d Cir.1985)). Therefore, the Court is confident that there is no danger that a conclusion that ADEA subgrouping is permissible will give rise to a case such as that posed in the *Lowe* hypothetical.

7. The Court's conclusion also finds support in the Supreme Court decision *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). In *Teal,* employees were required to pass a written exam as a first step in obtaining

permanent status as supervisor. The exam results yielded a 54% pass rate for black candidates and a 79% pass rate for white candidates. Nevertheless, the employer then promoted 22.9% of the black candidates and only 13.5% of the white candidates. Defendant employer argued that at the "bottom line" the policy did not adversely affect black candidates. The Court rejected this bottom line argument, pointing out that Congress intended Title VII to achieve equality in employment opportunities for every individual, not just equality in the overall number of minorities actually hired or promoted. *Id.* at 453, 102 S.Ct. at 2534. The Court reasoned that Congress did not intend to allow employers to discriminate against some employees while favorably treating others within the employees' group. *Id.* at 455, 102 S.Ct. at 2535.

In reaching this result, the Court relied on section 703(a)(2) of Title VII, which prohibits practices that would deprive or tend to deprive "*any individual* of employment opportunities." *Id.* at 453–54, 102 S.Ct. at 2534. Section 703(a)(2), 42 U.S.C. § 2000e–(2)(a)(2), provides the statutory basis for the disparate impact theory. The same language of section 703(a)(2) also appears in the ADEA, 29 U.S.C. § 623(a)(2).

Court concludes that it is permissible, under the ADEA, for Plaintiffs' to show that an employer's actions had a disparate impact on a subgroup of individuals within the protected class.

### B. Maine Human Rights Act Claim

■ Plaintiffs' claim under the Maine Human Rights Act remains because the Maine statute does not specifically limit its protection to a particular age group. 5 M.R.S.A. § 4572; *Maine Human Rights Comm'n v. Kennebec Water Power Co.*, 468 A.2d 307, 308–309 (Me.1983). Anyone, regardless of age, may maintain a claim based on age discrimination in employment under the MHRA.

### C. Prima Facie Case

■ Defendants have submitted various affidavits explaining the relationship between the evaluation process and their need to reduce the work force. Barrett Affidavit (Docket No. 78); Foulkes Affidavit (Docket No. 77–2); Medoff Affidavit (Docket No. 77–1); Parafinczuk Affidavit (Docket No. 22). These affidavits are found by the Court to be sufficient to create genuine issues of fact regarding whether Plaintiffs' statistical data accurately describe the impact of Defendants' downsizing on the work force. Therefore, the Court concludes that issues of fact remain regarding whether Plaintiffs have established a *prima facie* case of age discrimination.

Accordingly, it is *ORDERED* that Plaintiffs' Motion for Summary Judgment on Counts I and VI be, and it is hereby, *DENIED*.

Thus, the Court's discussion of section 703(a)(2) is particularly relevant to disparate impact in the

ADEA context and the instant case.