**William MULLIN, Plaintiff,**

**v.**

**RAYTHEON COMPANY, Defendant.**

**No. CIV.A. 96–12479–WGY.**

United States District Court, D. Massachusetts.

April 20, 1998.

J. Allen Holland, Jr., Lynch, Brewer, Hoffman & Sands, John R. Cavanaugh, Lynch, Brewer, Hoffman & Sands, Boston, MA, for Plaintiff.

James F. Kavanaugh, Jr., Deborah W. Kirchwey, Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

William Mullin commenced this action pursuant to the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"), and the Massachusetts Anti–Discrimination Act, Mass. Gen. Laws ch. 151B, § 4(1B). Mullin is a New Hampshire resident and Raytheon is a Delaware corporation having its principal place of business in Massachusetts. The case is before the Court on Raytheon's Motion for Summary Judgment. Fed.R.Civ.P. 56.

Mullin advances two theories of recovery. He alleges disparate treatment—that his age actually motivated the adverse employment action—as well as disparate impact—that a facially neutral policy affected employees over the age of forty more harshly than it did younger employees without any adequate business justification. The Court considers each of Mullin's two theories, first under federal law and then under Massachusetts law.

## FACTS

For the purpose of this motion the Court accepts as true Mullin's version of the facts, some of which are uncontested, and others of which Raytheon has chosen not to contest in the context of summary judgment. Mullin was born in 1934 and has been employed at Raytheon since 1967. Raytheon classifies its salaried employees according to a series of grades numbered 4 to 18, each of which carries a particular salary range. An employee may change levels without changing salary, or vice-versa, under certain circum-

stances, but generally may not receive a salary that is outside the range for his level. By 1995, Mullin was earning approximately $130,000 annually and had been classified at grade 15 since 1979. Raytheon consistently rated Mullin "outstanding" or "excellent" in performance reviews.

Mullin's job descriptions, as distinct from his salary or grade, varied considerably during his tenure. From November 1979 to November 1986, Mullin supervised over 2,000 employees as the Manufacturing Operations Manager for Raytheon's Andover, Massachusetts plant. Between November 1986 and some time in 1991, however, he became the Manufacturing Operations Manager for the second shift at the Lowell, Massachusetts plant, where he supervised approximately 400 employees. After 1991, Mullin held a series of positions in various capacities at Raytheon, supervising smaller departments with fewer or no employees reporting to him. His latest assignment was in 1994, a transfer to the gyro and motorwind work centers in the Lowell plant, where he supervised between 55 and 85 employees. Mullin acted during these years as a "troubleshooter" who moved from position to position to intervene in areas that needed improvement or were experiencing problems.

In 1994 and 1995, in response to defense industry cutbacks, Raytheon closed its plants in Lowell and Manchester, New Hampshire, and moved those operations to its Andover facility. In conjunction with the plant closings, Raytheon underwent a major restructuring, resulting in a salary freeze and the consolidation of three defense divisions into one. The company eliminated redundant positions and either laid off or reassigned a number of employees. Mullin was neither reassigned nor laid off.

According to undisputed evidence offered by Raytheon, the company set out in the wake of restructuring to determine whether the salaries and grades of the remaining employees reflected their actual job descriptions and responsibilities. In Mullen's case, the company decided that his job responsibilities were not commensurate with a grade of 15. The company determined that Mullin should be classified as a Manufacturing Program Manager, a grade 12 position, and that his salary should be reduced to the maximum for a grade 12 position. In October 1995, or thereabout, Raytheon reclassified Mullin from grade 15 to grade 12, and reduced his salary significantly.

The Raytheon employees responsible for the decision were Peter Gay, head of the newly-consolidated defense division, Joshua Merriman, the executive in charge of compensation and human resources, William Swanson, the general manager, Joseph DeBilio, the human resources manager, and Kevin Brewer, a staff manager and Mullin's immediate supervisor. Brewer recommended the reclassification to Merriman, DeBilio, and Gay as part of a general organizational review. Brewer based his recommendation on the number of employees Mullin supervised, the size of his department, his financial responsibilities for the company, and his place on the organizational chart. By company policy, the decision required the approval of both Brewer and Gay. The reclassification decisions were made in July 1995.

Mullin contends that the decision to downgrade him and reduce his salary rather than reassign him to a position commensurate with his grade level constitutes age discrimination. He identifies several incidents proximate to the reclassification and salary reduction that he says bear on his discrimination claim.

First, in March or April 1995, Ken Turner, a staff manager for Mullin's workcenter, on behalf of Peter Gay, asked whether Mullin intended to accept the voluntary retirement package that the company was then offering to certain qualified employees. When Mullin stated that he would not be taking early retirement, Turner informed him that Gay had instructed that Mullin's salary would be decreased by 10% within the year, with an additional reduction six months later. Gay raised the subject of early retirement again in November 1995.

Second, in October 1995 at a large meeting of managers and supervisors, Gay made reference to a particular senior hourly employee, stating "he is almost as old as Bill

Mullin." The employee had been with the company since 1955.

Third, in January 1996, while Mullin was meeting with his immediate supervisor, Kevin Brewer, Turner came from behind and grabbed him by the throat very tightly, preventing Mullin from standing before releasing him. Another manager witnessing the scene said, "Who did you think it was, Peter Gay?" Turner disputes this version of events, and characterizes the contact as playful.

Fourth, again in January 1996, Raytheon employee Robert Rego slapped Mullin in the face twice, and another unidentified employee punched him in the arm in the plant cafeteria.

Fifth, on February 1, 1996, Turner misled Mullin regarding the format of a presentation he was to give the following week. As a result, Mullin's presentation before a large number of managers was inappropriate. In addition, during the presentation, Mullin's view graphs were switched, and Brewer referred to the presentation as a "Jiffy Lube presentation." Mullin states that he had never experienced such hostility and abuse before the March 1995 meeting where he refused to take early retirement.

Finally, Mullin offers the expert opinion of David W. Griffin, Ph.D., a labor statistician who has drawn a statistical inference that older employees were more likely to be downgraded and less likely to be upgraded than younger employees in the Raytheon salary review.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to demonstrate the absence of evidence to support a

necessary element of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a demonstration is made, the burden falls on the nonmoving party to establish the existence of at least one issue that is both genuinely in dispute and that would materially affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### II. Disparate Treatment

### A. The ADEA Claim.

The federal Age Discrimination in Employment Act makes it unlawful for any employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" or "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a). These provisions apply only to persons who are at least forty years old. 29 U.S.C. § 631(a).

### 1. Legal Standards

The federal framework for disparate treatment age discrimination claims, absent direct evidence of discrimination, follows the law of evidentiary relationships[1] as set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 842–43 (1st Cir.1993); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823–24 (1st Cir.1991). The plaintiff must open with proof of the "basic fact," i.e., make out his prima facie case. This done, a rebuttable presumption of illegal discrimination arises, which the defendant must rebut by articulating a legitimate non-

---

1. The law of evidentiary relationships deals with the effect or relationship that proof of a specific fact or constellation of facts, which I call the "basic fact," has on another fact, which I call the

"resultant fact." *See Terry v. Electronic Data Systems Corp.*, 940 F.Supp. 378, 381 (D.Mass. 1996).

discriminatory reason for its actions. Thereupon, under federal law, the presumption dissipates. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). These burdens are burdens of production; the plaintiff at all times bears the burden of persuasion. *LeBlanc,* 6 F.3d at 842.

In cases where the presumption bubble bursts at the summary judgment stage, the judge considers all relevant evidence in a light most favorable to the plaintiff, including any evidence adduced to show that the employer's justification for its action was a mere pretext, to determine whether such evidence is sufficient to take the case to the jury. The plaintiff may not rely solely on the original *inference* of discrimination, however, to get to the jury. *Hicks* 509 U.S. at 511, 113 S.Ct. 2742. Rather, the plaintiff must put forth evidence sufficient to enable a reasonable fact finder to conclude that the adverse employment decision was wrongfully based on age animus. *LeBlanc,* 6 F.3d at 843; *Hidalgo v. Overseas Condado Ins. Agencies, Inc.,* 120 F.3d 328, 332 (1st Cir.1997) (quoting *Mesnick,* 950 F.2d at 823). The plaintiff thus bears the ultimate "burden of proving that his years were the determinative factor in his discharge, that is, that he would not have [experienced adverse employment action] but for his age." *Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1335 (1st Cir.1988) (citing cases).[2]

## 2. Mullin's Claim

For the purpose of this summary judgment motion, Raytheon does not contend that Mullin has failed to shoulder the minimal burden of establishing a prima facie case. As Mullin has therefore established the basic fact, here the presumption of illegal age discrimination arises.

Raytheon next goes forward and articulates a legitimate, non-discriminatory reason for its employment decision in accordance with the *McDonnell Douglas* framework. Raytheon states that it reduced Mullin's salary and grade classification because, at the time of the reclassification, his job responsibilities were no longer those of a grade 15 position. Because Raytheon policies mandated that his salary be adjusted to reflect his lower level classification, his salary was reduced to come within the range for grade 12 positions. *See DiCola v. SwissRe Holding (North America), Inc.,* 996 F.2d 30, 33 (2d Cir.1993) ("If a position's salary has been set at a level commensurate with certain job responsibilities and those responsibilities are subsequently diminished, an employer may make corresponding adjustments in positions and salaries regardless of the age of the employees involved."); *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 117 (2d Cir. 1991) ("[t]here is nothing in the ADEA that prohibits an employer from making employment decisions that relate an employee's salary to contemporaneous market conditions and the responsibilities entailed in particular positions and concluding that a particular employee's salary is too high.").

Neither party disputes the existence of Raytheon's policy or that Mullin's position at the time of the reclassification did not fall within the criteria for grade 15 compensation. Indeed, Mullin does not dispute that Raytheon has offered a legitimate, nondiscriminatory reason for its actions. Raytheon has thus satisfied its burden of production, and whatever presumption may have arisen out of Mullin's prima facie case has now vaporized.

## 3. Pretext

The contest is joined at the point of considering whether the non-discriminatory reason

---

**2.** In the Second, Seventh, Ninth, Tenth, Eleventh, and D.C. Circuits, if a genuine issue of material fact as to pretext exists at the summary judgment stage, the fact that an employer's legitimate, non-discriminatory reason for the adverse job action may be pretextual is sufficient to carry the case to the jury. Judith Olans Brown et al., *Some Thoughts About Social Perception and Employment Discrimination Law: A Modest Proposal for Reopening the Judicial Dialogue,* 46 Emory L.J. 1488, 1523 (1997). In the First, Fourth, Fifth, and Eighth Circuits, however, the simple existence of this factual issue is not sufficient, of itself, to ward off summary judgment. *See Id.* at 1524. *See also Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 16 (1st Cir.1994); *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1333 (8th Cir.1996). These circuits are known as "pretext plus" circuits.

offered by Raytheon was the true reason for its actions or merely a pretext, and if so, whether the true reason was age animus.

The heart of Mullin's pretext argument rests on his evidence of abuse and harassment at work, and his superiors' repeated inquiries into his retirement plans. Shocking though some of this evidence may be, in particular Mullin's allegations of physical abuse, none of it would permit a reasonable jury to conclude that Raytheon's compensation policy was a sham, and that age animus motivated the company's personnel decisions.

Of the verbal and physical behavior that Mullin considers indirect evidence of age animus, the most outrageous treatment came at the hands of persons who were neither directly involved in the decision to reclassify him, nor influential in that process. According to Raytheon's uncontested account, neither Robert Rego, Ken Turner, nor the unidentified cafeteria assailant played any role in the personnel decisions relating to Mullin. These men, if Mullin's account is accurate, behaved deplorably in the context of a professional working relationship. Physical abuse and childish pranks, if they occurred, do no credit to Raytheon if it permits its employees to engage in such behavior.

■ This Court does not consider these allegations lightly. Nonetheless, the biases of those who neither made nor influenced the challenged decision are not probative of animus on the part of those who did, and cannot be relied upon to establish that Raytheon's policy was a mere subterfuge for age discrimination. *See Smith,* 40 F.3d at 18; *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 10 (1st Cir.1990). Moreover, there is no indication that these altercations had anything to do with Mullin's age.

■ In a similar vein, Turner's inquiries regarding Mullin's plans for the early retirement package cannot be relied on to show age animus. The offer of an early retirement package is a "carrot, not a stick," which, standing alone, does not support an inference of age discrimination. *Schuler v. Polaroid Corp.,* 848 F.2d 276, 278 (1st Cir. 1988); *see also Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 480 (1st Cir.1993); *Gray v.*

*New England Tel. & Tel. Co.,* 792 F.2d 251, 255 (1st Cir.1986).

■ The Court is left with a single episode involving an employee who played a central role in the challenged decision, *viz.* Peter Gay's remark that a senior hourly employee was "almost as old as Bill Mullin." Gay uttered this statement at a meeting on an topic unrelated to Mullin, the reorganization, or the salary review. "Isolated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent." *Lehman v. Prudential Ins. Co. of America,* 74 F.3d 323, 329–30 (1st Cir.1996). At best, the remark indicates an awareness of Mullin's age and manifests the opinion that he was, in fact, old. What the statement does not reveal is the perception that Mullin was unable to do his job because of his age, or that his age made him an undesirable employee in any way. *Cf. Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir.1988) ("[A] statement merely comparing someone's age with that of another is insufficient to constitute direct evidence of discrimination."). Of equal importance, this remark does not tend to undercut Raytheon's proffered explanation that it was trying to rationalize its salary structure based on actual current job descriptions.

■ Mullin's statistical evidence is no more availing. While statistical evidence may be used to demonstrate pretext or discriminatory animus, *Mesnick,* 950 F.2d at 824, such evidence "rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale" for its actions toward an individual employee. *LeBlanc,* 6 F.3d at 848; *see Gadson v. Concord Hosp.,* 966 F.2d 32, 35 (1st Cir.1992). At least in a disparate treatment case, the Court should inquire "less whether a pattern of discrimination existed and more how a particular individual was treated, and why." *Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 156 (1st Cir.1990).

In this case, the statistics Mullin offers purport to show that employees aged 50 and older were more likely to be demoted during the restructuring than younger workers. The same calculations, however, show that no such inference may be drawn for the protected class as a whole. When workers aged 40

and over are compared with younger workers, the disparity disappears. That is to say, there was no significant deviation between the percentage of protected employees involved in the salary review and those who were downgraded. Moreover, considering only the pool of workers who were downgraded from level 15 positions,[3] and thus arguably similarly situated, there is no significant discrepancy even among employees aged 50 and over.

Raytheon's justification is that it has a policy of paying employees according to the level of work they currently perform, and not according to historic salary levels. When offered to rebut this justification, Mullin's statistics are simply insufficient for the task. The numbers do not address differences in these employees' experience, employment history, or value to the company, nor does the record as a whole indicate any connection between the statistics and Raytheon's policies and practices toward Mullin. *See Le-Blanc*, 6 F.3d at 847–48. They simply are not probative of Mullin's argument that the policy itself is a subterfuge, behind which Raytheon discriminates against its older workers. Even in combination with the various incidents Mullin describes, the statistics provide no logical support for the proposition that Raytheon's salary review and policies were motivated by his age, or that they were a pretext for reducing his salary.

Confronted with the acknowledged application of Raytheon's undisputed compensation policy to the facts of his situation, Mullin deftly switches the field. He contends that the explanation begs the question why he was assigned to below grade positions in the first place. Mullin contends that Raytheon is simply using one adverse employment decision—the refusal to promote him to a position commensurate with his salary—to justify another—reclassification and reduction in salary.

He maintains that the pertinent questions for the Court are, "Why was Mullin demoted? Why wasn't Mullin considered for a level 15 position?" Pt's Opp'n at 7. Yet it is

not the defendant's burden to answer these questions. Merely posing such questions is insufficient even to construct a prima facie case or prove the basic fact giving rise to the presumption. Mullin does not allege, nor does he offer any evidence that he was qualified for the level 15 position that he held, that he was qualified for any level 15 positions to which he was not promoted, that younger or less qualified people were hired or promoted ahead of him, or any other element of a prima facie case, other than his age. A failure to promote, standing alone, cannot give rise to an inference of employment discrimination. *Cf. Udo v. Tomes*, 54 F.3d 9, 14 (1st Cir.1995)(failure to rehire); *Ruiz v. Posadas de San Juan Assoc.*, 124 F.3d 243 (1st Cir.1997)(same). Without more, such a failure may simply indicate that the employer does not wish to extend an offer of employment or promotion. A federal court is not a super-employment committee, *Cf. Equal Employment Opportunity Comm'n. v. Amego*, 110 F.3d 135, 145 (1st Cir.1997), nor will this Court second guess Raytheon's hiring or advancement decisions absent some evidence of irrationality or discriminatory animus. *See Lehman*, 74 F.3d at 329; *LeBlanc*, 6 F.3d at 846; *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir.1990). Accordingly, the Court holds that Mullin has failed to raise triable issue as to pretext or age animus, both issues upon which he bears the ultimate burden of proof, and therefore a trial on these issues is not warranted.

**B. The Chapter 151B Claim.**

Massachusetts law prohibits an employer "because of the age on any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification." Mass. Gen. Laws ch. 151B § 4(1B).

■ The Massachusetts provision gives rise to the same presumption as in the feder-

---

**3.** This pool consisted of Mullin and two other employees, one of whom was younger than fifty. The entire sample of downgraded employees

from all levels is composed of twenty-one employees.

al analysis, but differs markedly in the effect given to a demonstration of pretext. Actions under Mass. Gen. Laws ch. 151B are governed by *Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 646 N.E.2d 111 (1995). In Massachusetts, the plaintiff who makes out a prima facie case and then proves pretext conclusively establishes prohibited discrimination. *Id.* at 444–46, 646 N.E.2d 111. Nothing in *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 686 N.E.2d 1303 (1997) changes this result. *See McMillan v. Massachusetts Soc. for the Prevention of Cruelty to Animals*, 140 F.3d 288, 297 & n. 4 (1st Cir.1998).

If follows, therefore, that if a plaintiff makes even a showing of a genuine issue as to pretext, summary judgment cannot be granted on the state claim, even if the sum of the evidence is insufficient as matter of law to support a finding of discriminatory intent. On the federal claims, in contrast, summary judgment might nevertheless be appropriate, despite a showing of pretext, because the finder of fact could credit the showing of pretext, and still be without a sufficient basis in evidence to find discrimination. *See Terry*, 940 F.Supp. at 381–85 (setting forth a detailed examination of the relationship between the state and federal burden shifting schemes in the context of summary judgment). If the plaintiff makes no showing of pretext, then the state and federal analyses collapse into one another and the summary judgment motion is decided according to familiar standards.

Accordingly, since Mullin has failed to raise a genuine issue as to the validity of Raytheon's proffered explanation, the distinctions in the state law analysis are not relevant to this case. On the Massachusetts law claims, as on the federal claims, Raytheon is entitled to judgement.

4. Significantly, at the same time it amended Title VII, Congress also amended provisions of the ADEA. *See* Civil Rights Act of 1991, § 115, 105 Stat. at 1079 (concerning limitation of actions); *id.* at § 302(2), 105 Stat. at 1088 (extending ADEA coverage to Senate employees).

5. Since *Hazen,* lower courts have expressed varying degrees of certainty on whether disparate

## III. Disparate Impact

As an alternative, Mullin seeks to prove discrimination by demonstrating that Raytheon's policy, even if unintentionally, affected older employees more harshly than younger employees, and thus had a disparate impact that was inconsistent with the ADEA and Massachusetts civil rights law. As support, Mullin offers the statistical analysis to which this Court has already adverted.

### A. The ADEA Claim.

The Supreme Court recognized the validity of the disparate impact theory of discrimination in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). There the court ruled, in the context of a Title VII action for racial discrimination in employment, that "practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices." *Id.* at 430, 91 S.Ct. 849. As a result, in appropriate cases, evidence that a facially neutral policy disproportionately burdens a protected class of people is sufficient to establish a genuine issue of discrimination.

Congress has since codified disparate impact doctrine in Title VII. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, § 105, 105 Stat. 1071, 1074–75, codified at 42 U.S.C. § 2000e–2(k)(1)(A). Congress has made no such amendment to the ADEA,[4] and the Supreme Court has never squarely addressed the issue of whether disparate impact applies to age discrimination claims. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).

Although the weight of authority prior to the 1993 *Hazen* decision supported the viability of disparate impact claims under the ADEA, the recent trend is to the contrary, and the weight of reasoned authority has now shifted.[5] *But see Camacho v. Sears*

impact applies to age discrimination claims. Compare *Equal Employment Opportunity Comm'n v. Francis W. Parker School*, 41 F.3d 1073, 1077 (7th Cir.1994) ("[d]ecisions based on criteria which merely tend to affect workers over the age of forty more adversely than workers under forty are not prohibited."); *DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 732 (3d Cir.1995) (noting in dicta that "in the wake of

*Roebuck de Puerto Rico*, 939 F.Supp. 113 (D.P.R.1996) (quoting the 1992 pre-*Hazen* decision in *Finnegan v. Trans World Airlines, Inc.*, 967 F.2d 1161 (7th Cir.1992), for the proposition that the weight of authority supports disparate impact under the ADEA).

Nevertheless, like the Supreme court, he First Circuit has never squarely addressed the issue. In *Holt v. Gamewell Corp.*, 797 F.2d 36, 37 (1st Cir.1986), the court stated "[a]n employee suing his employer for age discrimination must show either disparate treatment or a discriminatory impact." The court later explained, however, in *Graffam v. Scott Paper Co.*, 60 F.3d 809, 1995 WL 414831, *3 (1st Cir.1995) (unpublished table decision), that *Holt* had merely assumed the availability of the doctrine and had not discussed the matter or relied on disparate impact in deciding the case. Thus, as the *Hazen* opinion marks a divide in judicial thinking on this issue, it requires closer scrutiny.

In *Hazen* there was evidence that the defendant employer had fired the plaintiff in order to prevent his pension benefits from vesting. The court held that the decision to fire the plaintiff was not driven by a "prohibited stereotype" or "denigrating generalization about age", but rather represented an accurate judgment that the employee was "close to vesting." *Id.* at 612, 113 S.Ct. 1701.[6] The Supreme Court recognized the possibility that employers may use pension status as a proxy for age and thereby violate the ADEA, but the Court was careful to say that pension status would be viewed as a proxy for age "not in the sense that the ADEA makes the two factors equivalent, ... but in the sense that the employer may suppose a correlation between the two factors and act accordingly." *Id.* at 613. The Court suggested that "[w]hen the employer's decision is wholly motivated by factors other

than age," *id.* at 611, there could be no violation of the ADEA. This, in turn, implies that disparate impact, which does not rely on a showing of age-bias, is not available under the ADEA.

The Court did not decide the question of the viability of disparate impact claims under the ADEA, however, and three judges in concurrence expressly predicated their decisions to join in the opinion on the understanding that it did not resolve the issue. The concurring justices noted that "there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA." *Hazen*, 507 U.S. at 618 (Kennedy, Thomas, and Rehnquist, JJ., concurring).

Despite the Supreme Court's suggestive language in *Hazen* and the gathering strength of authority against applying the disparate impact analysis to ADEA cases, this Court adopts the present stance of the First Circuit and assumes without deciding that disparate impact analysis might be appropriate under some circumstances in an ADEA claim. The Court does so largely because, even indulging this assumption, the record of this case reveals that Mullin's argument is nevertheless infirm. He has failed to raise a genuine dispute as to each of the necessary elements of a disparate impact case.

### 1. Evidence of Disparate Impact

 In order to establish a prima facie case, the "basic fact" of disparate impact, a plaintiff must (1) identify a facially neutral employment policy of the employer that (2) causes (3) a statistically discernable disparate impact on a protected employee group. *See Equal Employment Opportunity Comm'n. v. Steamship Clerks Union, Local 1066*, 48 F.3d

---

*Hazen*, it is doubtful that traditional disparate impact theory is a viable theory of liability under the ADEA"); *Lyon v. Ohio Educ. Ass'n & Prof'l Staff Union*, 53 F.3d 135, 139–40 & n. 5 (6th Cir.1995) (same); *Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1007 (10th Cir.1996) (holding that disparate impact claims are not cognizable under the ADEA); *with Mangold v. California Pub. Util. Comm'n*, 67 F.3d 1470, 1474 (9th Cir.1995) (noting both pre-*Hazen* and post-*Hazen* precedent approving of disparate impact, but affirming verdict under disparate treatment); *Smith v. City of*

*Des Moines*, 99 F.3d 1466, 1470 (8th Cir.1996) (relying without discussion on existing precedent recognizing the viability of disparate impact claims under the ADEA); *District Council 37, Amer. Fed. of State, County and Muni. Employees v. New York City Dep't of Parks & Rec.*, 113 F.3d 347, 351 (2d Cir.1997) (same).

**6.** The firing was held to violate section 510 of ERISA, but not, without more, the ADEA.

594, 601 (1st Cir.1995) (Title VII race discrimination). In the face of an established prima facie case, the employer bears the burden of producing evidence that the challenged policy was consistent with business necessity. *Id.* at 601–02, 607 ("Once the EEOC demonstrated a prima facie case of discrimination, the burden of *production* shifted.")(emphasis added).[7]

■■■ Mullin has satisfied the first two elements of his prima facie case claim. He specifically challenges the company-wide salary review and its attendant salary and grade level adjustments. In addition, there is no doubt but that the challenged policy caused the adverse employment action of which Mullin complains. What remains to be shown is that the policy resulted in a statistically measurable disparity between older and younger workers.

As an initial matter, the evidence does not demonstrate that the salary review resulted in a disparate impact on the protected class as a whole. Rather, as to those employees who were older than *fifty*, the evidence would support an inference of disparate impact. Specifically, the evidence shows that employees over fifty years old suffered salary reduction and downgrades in numbers that were disproportionate to their representation in the affected population.

It is not at all clear that this evidence suffices to establish a prima facie case of discriminatory impact. The Second Circuit, apparently the only circuit court to confront the issue, and one of only two circuits fully to embrace ADEA disparate impact claims after *Hazen,* has held that a disparate impact upon a segment of the protected group, where there is no impact on the group as a whole,

cannot support a prima facie case. *See Criley v. Delta Air Lines, Inc.,* 119 F.3d 102, 105 (2d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 626, 139 L.Ed.2d 607 (1997); *Lowe v. Commack Union Free School Dist.,* 886 F.2d 1364, 1372–74 (2d Cir.1989). The Second Circuit has reasoned that a plaintiff who is allowed to select the subgroup for analysis potentially could show discrimination in situations that the statute was not meant to prohibit. *See Lowe* at 1373 ("[A]n 85 year old plaintiff could seek to prove a discrimination claim by showing that a hiring practice caused a disparate impact on the 'sub-group' of those age 85 and above, even though all those hired were in their late seventies."). At least one court in this circuit has rejected the Second Circuit's position, countering that the ADEA directs an inquiry into the fairness of the challenged policy toward individuals rather than toward groups, but the First Circuit has never expressed an opinion. *See Graffam v. Scott Paper Co.,* 848 F.Supp. 1, 3–4 (D.Me.1994), *aff'd on other grounds,* 60 F.3d 809, 1995 WL 414831 (1st Cir.1995) (unpublished table decision) (affirming defense judgment and expressly declining to reach subgroup issue).[8]

### 2. Business Necessity

Like the disparate impact issue itself, the subgroup issue presents a conundrum that the Court need not resolve, because even if Mullin may rely on the statistics he offers, Raytheon has interposed a business necessity defense that Mullin has not rebutted. Raytheon has produced uncontested evidence that the company suffered a business contraction stemming from a downturn in the defense industry. Following plant consolidation and administrative restructuring, Ray-

---

7. The allocation of burdens in Title VII disparate impact cases has fluctuated over time. *Ward's Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), held that the employer bears only a burden of producing evidence of a business necessity; the burden of persuasion remains with the employee-plaintiff. *Id.* at 659–60, 109 S.Ct. 2115. Congress later amended Title VII to eliminate this final burden shift, and impose the burden of proof of business necessity on the employer. Civil Rights Act of 1991, § 105, 105 Stat. at 1074. Neither the Supreme Court nor Congress addressed burden shifting under the ADEA.

8. This Court has noted that the First Circuit allows a plaintiff to satisfy her prima facie burden by showing that she was replaced either by someone younger or by someone under forty, so long as the plaintiff's age places her within the protected category. *See Devlin v. WSI Corp.,* 833 F.Supp. 69, 74–75 (D.Mass.1993). That opportunity, however, has been confined to disparate treatment cases. The reasoning behind that rule is less compelling in a disparate impact case, where the proof derives its force from an analysis of the impact on the protected group as a whole.

theon's decision to reclassify many of its salaried employees was necessary to ensure that salaries and labor grades were commensurate with the actual job responsibilities of those employees. Mullin has offered nothing to suggest that such parity is not a necessary adjunct to a sound plan of business management, nor can be suggest any way that the company could have achieved its ends while imposing no disparate impact on its older workers. Mullin readily acknowledges that his position at the time of the salary reduction was not that of a grade 15 employee. That Mullin seeks to have his job responsibilities adjusted so that they correspond to his salary, rather than the reverse, is not surprising. But neither is it compelled by the ADEA.

### 3. The Chapter 151B Claim

As in the federal scheme, the application of disparate impact under chapter 151B age discrimination claims is far from settled. Although it is true that Massachusetts has embraced disparate impact in other contexts, following the federal model, *see, e.g., Lynn Teachers Union v. Massachusetts Comm'n Against Discrimination*, 406 Mass. 515, 526, 549 N.E.2d 97 (1990); *School Comm. of Braintree v. Massachusetts Comm'n Against Discrimination*, 377 Mass. 424, 428–29 & n. 10, 386 N.E.2d 1251 (1979), no Massachusetts case has ever applied it in an age discrimination case. Because the Court has already concluded, however, that Mullin has failed to establish the existence of a genuine dispute as to Raytheon's defense of business necessity, even if the Court were to hold that Massachusetts has accepted disparate impact in age discrimination cases, Mullin can no more prevail under state law than he can under federal law.

### CONCLUSION

Although Mullin has advanced his cause over several hurdles, his evidence is insufficient to create a genuine issue of material fact with respect to two critical issues: first to show that Raytheon's proffered rationale for reducing his salary was a pretext, and second to demonstrate that the reduction was not undertaken in accordance with business necessity. Even resolving all disputed matters and drawing all inferences in Mullin's favor, a reasonable jury could not hold Raytheon liable on either the federal or state claims. Accordingly, Raytheon's motion for summary judgment as to all four counts of the complaint is hereby GRANTED.