**Cosmo QUERCIA, Plaintiff,**

v.

**ALLMERICA FINANCIAL, Defendant.**

**No. CIV.A. 97–40143–NMG.**

United States District Court,
D. Massachusetts.

Feb. 24, 2000.

---

Harold L. Lichten, Pyle, Rome & Lichten, P.C., Terence E. Coles, Pyle, Rome & Lichten, P.C., Boston, MA, for Plaintiff.

Neil Jacobs, Linda E. Podheiser, Hale & Dorr, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Cosmo Quercia ("Quercia") filed this three count lawsuit against Allmerica Financial ("Allmerica") in July, 1997 alleging

unlawful age discrimination under federal and state law against his former employer. Count I alleges a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, Count II alleges a violation of Massachusetts' Anti-Discrimination law, M.G.L. c. 151B § 4 and Count III alleges a violation of Massachusetts' Equal Rights Act, M.G.L. c. 93 § 103. Pending before the Court is Allmerica's Motion for Summary Judgment on all three counts (Docket No. 29).

## I. Background

Quercia worked in the Worcester, Massachusetts home office of Allmerica as the Director of General Services. He had functional responsibility for several administrative areas, including: mailroom, image and record center, switchboard, transportation, manual control and distribution, supply, fleet and chauffeurs. At the time he was terminated, Quercia was fifty years old and earned an annual salary of $86,500.

In September, 1996, Renee Mikitarian Bradley ("Bradley") became Allmerica's Vice President of Facilities Management. In that position, she was Quercia's supervisor, as well as the supervisor of several other employees. Bradley was thirty eight years old at the time.

In February, 1997, John J. Henry ("Henry"), Supervisor of Transportation, reported to the Human Resources Department a problem he had with his supervisor, James Jackson ("Jackson"), a manager who, in turn, was supervised by Quercia. Henry stated that he was having difficulty working with Jackson, that he wanted a new position and that he had discussed the matter with Quercia. Quercia reports that, after discussing his plans with Henry, he told Jackson that Jackson ought to be more careful about how he treated those who reported to him.

Henry's problems with Jackson persisted nevertheless. Ultimately, Allmerica terminated Jackson's employment and held Quercia responsible for his conduct because Quercia had been Jackson's supervisor. Bradley states that she terminated Quercia in March, 1997 because she believed Quercia: 1) tolerated abusive treatment of subordinates by Jackson, 2) had lost the respect of the employees in Jackson's area (which Quercia indirectly supervised) and 3) failed to follow her instructions not to tell Jackson that he was going to be fired.

On the same day that Quercia was terminated, Bradley hired Tom Stanton ("Stanton"), a 38 year-old employee in Allmerica's Atlanta office. Stanton was hired as "Director, Support Services" at an annual salary of approximately $65,000. In that position, according to Allmerica, Stanton assumed the duties formerly held by Jackson. He reported directly to Bradley, however, because Allmerica eliminated the position of "Director of General Services", the position previously held by Quercia.

## II. Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). In cases where concepts like motive or intent are at

issue, summary judgment may be appropriate "if the nonmoving party rests merely on conclusory allegations, improbable inferences and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## III. Counts I and II—ADEA and M.G.L. c. 151 B

Quercia alleges that in terminating his employment, Allmerica violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. To prevail on his ADEA claim, Quercia must first establish a prima facie case, thereby creating a presumption of discriminatory intent of the part of Allmerica. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged discriminatory act. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Hicks*, 509 U.S. at 507–08, 113 S.Ct. 2742. Under ADEA, if the defendant succeeds in carrying its burden, the presumption drops out of the picture and the plaintiff then has the burden of producing evidence of intentional discrimination. *Hicks*, 509 U.S. at 510–11, 113 S.Ct. 2742. Notwithstanding this burden shifting, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207.

### A. *Prima Facie Case*

■ In the First Circuit, the burden-shifting paradigm assumes a slightly different form in age discrimination cases depending on whether or not the dismissal represented part of a reduction in force. *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 332 (1st Cir.1997).

If the plaintiff was not dismissed as part of a reduction in force, he establishes a prima facie case by demonstrating that he: (1) was at least forty years of age, (2) met the employer's legitimate job performance expectations, (3) experienced an adverse employment action, and (4) was replaced by a person with roughly equivalent job qualifications. *Id.* (citing *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1117 (1st Cir.1993)).

■ With respect to the fourth element of a prima facie case in a non-reduction in force scenario, the plaintiff must show that the employer sought some form of replacement performance which demonstrates its "continued need for the same services and skills." *Id.* (citation omitted). "A replacement need not be sought from outside the company, of course, nor need he be designated formally as such." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n. 11 (1st Cir. 1979).

■ If the employer dismissed the plaintiff as part of a reduction in force, the plaintiff need not show replacement by someone with equivalent job qualifications, but rather "the plaintiff may demonstrate either that the employer did not treat age neutrally or that younger persons were retained in the same position." *Hidalgo*, 120 F.3d at 333 (citations omitted).

■ Under the parallel Massachusetts statute, the first three elements of a *prima facie* case are identical. *Lehman v. Prudential Ins. Co. of America*, 74 F.3d 323, 327–28 (1st Cir.1996). With respect to the fourth element, the plaintiff must establish that the individual serving as a replacement is younger. *Id.* Massachusetts law, therefore, closely resembles the federal reduction-in-force scenario.

There is no dispute that Quercia satisfies the first three elements of a *prima facie* case under both ADEA and M.G.L. c. 151B, but Allmerica disputes that Quercia has satisfied the fourth element. Allmerica asserts that it eliminated Quercia's position, thereby making this a reduction-in-

force case. If so, Quercia must then show either that the employer did not treat age neutrally or that a younger person was retained in the same position. *Hidalgo*, 120 F.3d at 333, *Lehman*, 74 F.3d at 328.

Quercia argues that, notwithstanding his title, Stanton (a younger person) assumed Quercia's position. As Director of General Services Quercia oversaw several departments and reported directly to Bradley with respect to the mailroom, the image and record center, the switchboard, transportation, manual control and distribution, supply, fleet and chauffeurs. Shortly after he was hired, Stanton generated a written description of his duties as Director of Support Services. In that document, he stated that the Director of Support Services supervises the mailroom, image processing, transportation and fleet administration, switchboard, shipping and receiving, duplication and policy processing. In addition, the Director of Support Services reports directly to Bradley.

Although Allmerica insists that Stanton took Jackson's position rather than Quercia's, the combination of departments supervised and reporting structure indicates that a younger person was retained in the same position that Quercia held. Ultimately, the comparison of departmental functions of the two employees is a question of material fact best suited for a jury to determine.

Based on *Hidalgo*, Quercia would then have established a prima facie case under ADEA in a reduction-in-force scenario. With respect to the Massachusetts Anti-Discrimination Law, Quercia also satisfies the final prerequisite, that his replacement was younger.

### B. *Legitimate, Non-discriminatory Reasons*

Once Quercia has established a *prima facie* case, there is a presumption that the employer engaged in impermissible age discrimination. *Hidalgo*, 120 F.3d at 334. The burden then shifts to the employer to rebut this presumption by producing evi-

dence that the employee's termination was the result of legitimate, non-discriminatory reasons. *Id.*

Allmerica presents three reasons why it terminated Quercia, namely that Bradley: 1) held Quercia responsible for Jackson's unrestrained abusive conduct, 2) believed Quercia had lost credibility with his employees and 3) could not trust Quercia. Under the burden shifting dynamic of *McDonnell Douglas* and *Hicks*, proffering these reasons is enough for the employer to satisfy its burden. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Hicks*, 509 U.S. at 507-08, 113 S.Ct. 2742. The presumption raised by the *prima facie* case then "drops from the case." *Hidalgo*, 120 F.3d at 335 (citing *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742).

### C. *The Plaintiff's Ultimate Burden*

Once the employer satisfies its burden of producing non-discriminatory reasons for the termination, the burden reverts to the plaintiff. Under ADEA, the plaintiff must prove facts sufficient to enable a reasonable factfinder to find that the employer's reasons were not the real reasons for the employment decision and that age animus was. *Hidalgo*, 120 F.3d at 335. "[T]he plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer." *Id.* (citation omitted).

■ Under M.G.L. c. 151B, to avoid summary judgment, the plaintiff must "persuade the court by a fair preponderance of the evidence, that the defendant's proffered reason for its employment decision was not the real reason, but is a pretext for discrimination." *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128, 686 N.E.2d 1303 (1997). Massachusetts law, then, does not include the further requirement of showing that age animus was the true reason for the employer's action. Because the ADEA standard is stricter, the Court examines Quer-

cia's case under that standard. If the case passes muster under ADEA, then, *a fortiori*, Quercia's claim satisfies the easier state law standard.

### 1. *Pretext*

■ In order to demonstrate that Allmerica's proffered reasons for his termination were not the actual reasons, Quercia challenges each one.

#### a. *Responsibility for Jackson's Unrestrained Abusive Conduct*

Quercia points out that only one employee on one occasion complained to Quercia about Jackson's conduct. In response to that complaint, Quercia asserts that he met with Jackson and warned him to "be careful how he treats people". Quercia's reaction to the employee's complaint, i.e. to discuss the matter with Jackson, does not support a claim that he was tolerant of Jackson's behavior. Quercia contends that, to the contrary, it shows that he tried to stop Jackson's harangues.

#### b. *Loss of Credibility with Supervised Employees*

Quercia argues that Bradley relied solely on the statement of one employee who claimed that employees would not go to Quercia because they believed that he tolerated Jackson's misbehavior. Quercia also notes that his performance evaluations show that he had "solid management skills", "demonstrated leadership and team building skills," was sensitive to "individual issues" and "interact[ed] positively with his people". Even the particular employee who complained about Jackson's treatment of him stated that Quercia never treated him with disrespect. Finally, Quercia asserts, and Allmerica does not deny, that Bradley failed to interview mailroom employees to substantiate the claim that everyone knew that Quercia was aware and tolerant of Jackson's misbehavior.

#### c. *Bradley's Loss of Trust in Quercia*

Quercia argues persuasively that a reasonable factfinder could find that Allmerica's third stated reason for his termination was pretextual. The issue devolves to the interpretation of Bradley's instructions to Quercia when she asked him to bring Jackson to her office. Bradley told Quercia not to inform Jackson that he was going to be fired. Quercia told Jackson that the meeting was "serious" and "big trouble". A reasonable factfinder could find that, notwithstanding his comments to Jackson, Quercia did not disobey Bradley's instructions.

### 2. *Age Animus*

■ Under the ADEA standard, Quercia must also establish that age animus was the real reason for his termination. *Hidalgo*, 120 F.3d at 335. He does not need to make such a showing under state law. *Matthews*, 426 Mass. at 128, 686 N.E.2d 1303. Quercia offers four reasons that would warrant a factfinder's determination that age was the actual precipitating cause of his discharge:

1. Stanton was hired (on the very day that Quercia was terminated) for an annual salary that was $20,000 less than Quercia's. Notwithstanding Allmerica's claims, it appears that Stanton performs most of the functions that Quercia was assigned. Bradley knew that Stanton, a thirty eight year-old, was interested in obtaining a position in Allmerica's Worcester office prior to Quercia's termination. That knowledge may have influenced her decision to terminate Quercia and to hire a younger person to perform most of the same tasks at a significantly reduced salary.

2. During a December 1996 meeting, Bradley told Quercia that another employee, Rick Morwick, was "coasting", that he had been with Allmerica "for a lot of years" and if he wanted to retire, Bradley could "make that happen really quick". Allmerica cites *Mullin v. Raytheon*, 2 F.Supp.2d 165, 170 (D.Mass.1998) to support its position that such a stray remark

is immaterial, but, although it was perhaps a stray remark, it was uttered by the person who ultimately made the adverse employment decision in Quercia's case. A reasonable factfinder could view that statement as evidence of discriminatory intent. *Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 347–48 (1st Cir.1998).

3. Although Henry had complained of Jackson's behavior on several occasions before Quercia became the Director of General Services, no action against Quercia's predecessors was taken for their failure to control Jackson.

4. Bradley spoke to only one employee in the mailroom about Jackson's behavior toward Henry and Quercia's credibility with his subordinates. Quercia asserts that Bradley's failure to interview any other mailroom employees to determine whether Henry's reports were accurate or that Quercia had tolerated Jackson's misbehavior could be found to indicate an animus toward him.

In light of all of these factors, Quercia has presented enough evidence to permit a reasonable factfinder to find that the employer's proffered reasons were not the real reasons for the employment decision and that age animus was. *Hidalgo*, 120 F.3d at 335. Summary judgment, therefore, is not warranted.

## IV. Count III—Massachusetts Equal Rights Act

■ Allmerica has requested (in a footnote) that the Court reconsider its denial of Allmerica's motion to dismiss Count III, which alleges a violation of the Massachusetts Equal Rights Act ("MERA"), M.G.L. c. 93 §§ 102–103. In the time since that ruling, in another age discrimination case in this Court, *Bhawan v. Fallon Clinic, Inc.*, this Court found that M.G.L. c. 151B is the exclusive state law remedy for employment discrimination complaints. 5 F.Supp.2d 64, 67 (D.Mass.1998)(citing *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 264 (1st Cir.1994)). *Woods* holds that

the adequacy of the remedies afforded under M.G.L c. 151B, the efficiency of a uniform legislative remedy, the importance of giving effect to the procedural prerequisites of M.G.L. c. 151B, and the absence of clear guidance from the Massachusetts Supreme Judicial Court, all support the finding that M.G.L. c. 151B is the exclusive state law remedy for employment discrimination complaints.

30 F.3d at 264. In light of the First Circuit Court of Appeals' decision, this Court's own decision in *Bhawan* and the lack of guidance, to date, from the Massachusetts Supreme Judicial Court, this Court concludes that Allmerica is correct. Count III will, therefore, be dismissed.

### ORDER

For the reasons set forth in the Memorandum above, Allmerica's Motion for Summary Judgment (Docket No. 29) is:

1) with respect to Count I (ADEA claim), DENIED;

2) with respect to Count II (M.G.L. c. 151B claim), DENIED; and

3) with respect to Count III (MERA claim), ALLOWED.

Count III is hereby DISMISSED.

So ordered.