MAINE HUMAN RIGHTS COMMISSION
on its own Behalf and for the Use of
Steven TRUDEL

v.

KENNEBEC WATER POWER
COMPANY.

Supreme Judicial Court of Maine.

Argued Sept. 16, 1983.
Decided Nov. 15, 1983.

James E. Tierney, Atty. Gen., William H. Laubenstein, III, Asst. Atty. Gen., John E. Carnes (orally), Maine Human Rights Com'n, Augusta, for plaintiff.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, S. Mason Pratt (orally), Richard W. Murphy, William M. Finn, Portland, for defendant.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ. and DUFRESNE, A.R.J.

VIOLETTE, Justice.

The Maine Human Rights Commission (the Commission) brought suit against the Kennebec Water Power Co. (Kennebec),[1] alleging that Kennebec had engaged in age discrimination in its hiring practices when it failed on two occasions to hire the plaintiff

---

1. Originally, Central Maine Power Co., the owner of the Long Falls Dam, was also named as a defendant. The Superior Court granted summary judgment in favor of Central Maine Power and the plaintiff does not appeal from that decision.

Steven Trudel and instead hired two older job applicants. The Superior Court, Kennebec County, granted Kennebec's motion to dismiss for failure to state a claim, M.R. Civ.P. 12(b)(6), considered as a motion for summary judgment, M.R.Civ.P. 56. Because we find that the Maine anti-age discrimination statute, 5 M.R.S.A. § 4572(1)(A) (1979), was not intended to protect only persons over the age of 40 in the manner of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1976 & Supp. V 1981), and that the Maine statute is not preempted by the federal act, we vacate the judgment of the Superior Court.

## I.

Kennebec Water Power Co. operates the Long Falls Dam in Dead River, Maine. The plaintiff Steven Trudel applied to Kennebec for the position of dam operator once in July 1977, when he was 34 years old, and again in September 1980, when he was 37 years old. The Maine Human Rights Commission alleges that in 1979 and in 1980 Kennebec hired 57 year old men to be dam operators, while Steven Trudel's applications were rejected because of his age.

Based on this perceived injustice, Mr. Trudel filed with the Commission a charge of age discrimination against Kennebec. After investigation of the matter, the Commission found that reasonable grounds existed to believe that Kennebec had discriminated against Mr. Trudel because of his age, in violation of 5 M.R.S.A. § 4572.[2] The Commission attempted to dispose of the case by informal means as required by 5 M.R.S.A. § 4612(3) (1979),[3] but when no settlement with Kennebec could be reached, the Commission instituted this suit.

The Superior Court based its dismissal of the complaint and its entry of summary judgment for Kennebec on two grounds. First, the court ruled that the Maine age discrimination statute creates a protected age class which is the same as that created by the federal ADEA[4]—only persons aged 40 to 70 are protected from age discrimination in employment. Second, the court found that even if the Maine statute were intended to apply to persons under age 40, the Maine law would be preempted by the federal law as inconsistent with its aim to promote the employment of older persons.

We do not agree with the trial court's conclusion that 5 M.R.S.A. § 4572(1)(A) extends protection only to persons within the federal act's protected age group. The Maine Human Rights Act, 5 M.R.S.A. §§ 4551–4632, was enacted in

---

2. 5 M.R.S.A. § 4572(1)(A) (1979) provides:

    1. Unlawful employment. It shall be unlawful employment discrimination, in violation of this Act, except where based on a bona fide occupational qualification:

    A. For any employer to fail or refuse to hire or otherwise discriminate against any applicant for employment because of race or color, sex, physical or mental handicap, religion, ancestry or national origin or age, or because of any such reason to discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment, or in recruiting of individuals for employment or in hiring them, to utilize any employment agency which such employer knows, or has reasonable cause to know, discriminates against individuals because of their race or color, sex, physical or mental handicap, religion, age, ancestry or national origin; . . . .

3. 5 M.R.S.A. § 4612 (1979 & Supp.1982–1983), outlines the procedure to be taken by the Commission when it received a complaint. Subsection 3 provides, in part: "If the commission finds reasonable grounds to believe that unlawful discrimination has occurred . . . it shall endeavor to eliminate such discrimination by informal means such as conference, conciliation and persuasion."

4. Section 12(a) of the Age Discrimination in Employment Act of 1967, Pub.L. No. 90–202, 81 Stat. 607 (1967) (codified at 29 U.S.C. § 631 (1976)) provided: "The prohibitions in this chapter shall be limited to individuals who are at least forty years of age but less than sixty-five years of age." The upper age limit was changed to 70 years of age by the Age Discrimination in Employment Act Amendments of 1978, Pub.L. No. 95–256, § 3(a), 92 Stat. 189 (codified at 29 U.S.C. § 631(a) (Supp. V 1981)).

1971, some three years after Congress adopted the federal ADEA forbidding age discrimination in the employment of persons between 40 and 65 years old. Unlike the federal act, the Maine statute does not specifically limit its protection to a particular age group; it is age-neutral.

In 1977, the Legislature enacted 5 M.R. S.A. § 4574, dealing solely with age discrimination. The section stated unequivocally, in part: "It is the intent of the Legislature that discrimination based on age against *any person* who seeks employment or who is already employed should not be tolerated." (emphasis added). In 1979, § 4574 was repealed and reenacted, substantially strengthening the age discrimination prohibitions in the section. Subsections 2 and 3 provide:

2. Legislative findings and intent. The Legislature finds that many older Maine citizens are forced out of the work force solely because of their age. The Legislature further finds that many older Maine residents who have been forced out of the work force are fully capable of carrying out the duties and responsibilities required by their employment. Finally, the Legislature finds that many older Maine citizens, because of their years of experience, can make valuable contributions to the work force.

*It is the intent of the Legislature that discrimination based on age against any person who seeks employment in the private sector or who is already employed by a private employer shall not be tolerated.* It is further the intent of the Legislature to ensure that any older person who seeks employment or wishes to continue employment in the private sector and who is capable of fulfilling the duties and responsibilities of this employment shall be treated like any other person who seeks employment or wishes to continue this employment. Finally, it is the clear and unequivocal intent of the Legislature to prohibit employers in the private sector from requiring employees to retire at a specified number of years of service.

3. Unlawful employment discrimination. It shall be unlawful employment discrimination:

A. For any employer to fail or refuse to hire any applicant for employment because of the age of the individual; or

B. For any employer to require to permit, as a condition of employment, any employee to retire at or before a specified age or after completion of a specified number of years of service.

5 M.R.S.A. § 4574(2) & (3) (Supp.1982–1983) (emphasis added). We discern in the expression of these multiple concerns a legislative intent to protect all persons from age discrimination in employment,[5] requiring an employer to evaluate the respective qualifications of employees, regardless of their ages.

Debate in the House of Representatives prior to the adoption of the 1979 amendments emphasizes this legislative intent to prohibit all age discrimination in employment, as inimical to individual rights. Representative Diamond stated:

I would like to remind all of us that what we are talking about here is the rights of individuals, the right of all Americans. We are hoping that everyone will look at this and let these Americans, whether they are 65, whether they are 41, 34, or whatever, to be evaluated on the job they are doing and that is all we are saying. If the person is not performing well, then he or she goes, but if they are, then they can stay, and that is the bottom line, how they are doing on the job.

2 Legis.Rec. 1320 (1979). No part of the debate intimates a contrary legislative intent.

---

5. The only exception to this is found at 5 M.R. S.A. § 4573(1–A)(A) (Supp.1982–1983), which states:

It shall not be unlawful employment discrimination:

1–A. Age. To discriminate on account of age to:

A. Comply with the state or federal laws relating to the employment of minors.

In *Wells v. Franklin Broadcasting Corp.*, 403 A.2d 771, 773 (Me.1979), we stated, "The purpose of the section 4572 ban on age discrimination in employment is to assure that performance, not age, will determine an employee's marketability and job security." 5 M.R.S.A. § 4572(1)(A) thus extends the protection afforded by the federal statute by declining to create a limited, specially protected age group. As we have previously recognized, in *Maine Human Rights Commission v. Local 1361, United Paperworkers International Union*, 383 A.2d 369, 375 (Me.1978):

> [T]he employment discrimination provisions in our statute were intended to be the state counterparts of the Federal Act, complementing and in certain instances supplementing the federal. . . . [W]here the Federal Act is silent as in a definition of 'discrimination,' the Maine Act speaks in broad terms, defining 'discrimination' as '*without limitation,* segregate or separate.' 5 M.R.S.A. § 4553(2) (emphasis supplied).

We find that in enacting the age discrimination prohibitions, the Legislature intended to supplement the federal ADEA, and we decline to superimpose a limitation which does not appear on the face of the statute.

The defendant correctly points out that this court in the past has relied on federal case law construing the federal anti-discrimination statutes as an aid to interpretation of similar provisions in our own Maine Human Rights Act. *See Maine Human Rights Commission v. City of Auburn*, 408 A.2d 1253, 1261 (Me.1979); *Wells*, 403 A.2d at 773 n. 4; *Maine Human Rights Commission v. Local 1361*, 383 A.2d at 375. In *Percy v. Allen*, 449 A.2d 337, 342 (Me.1982), we explained: "To the extent that there exists an identity of purpose and objectives as between the Maine and federal provisions, reference to the latter in construing the former is entirely appropriate." We hasten to add, however, that where the provisions of the Maine statute differ substantively from their federal counterparts, as is the case here, deference to construction of the federal version is unwarranted.

## II.

We also disagree with the trial court's finding that federal law would preempt the Legislature's extension of protection against age discrimination to persons outside the federally protected age group.

The United States Supreme Court has held that "preemption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.' " *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 522, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402 (1981), quoting *Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981). The federal district court in *Simpson v. Alaska State Commission for Human Rights*, 423 F.Supp. 552, 555 (D.Alaska 1976), *aff'd*, 608 F.2d 1171 (9th Cir.1979), explained when preemption is appropriate: "Preemption occurs when compliance with both federal and state regulations is physically impossible, the nature of the subject matter requires federal supremacy and uniformity, or Congress intended to displace state legislation."

It is clear that Congress, in enacting the ADEA, intended to leave room for states to supply consistent legislation. A regulation of the Department of Labor specifically states: "The ADEA does not preempt state age discrimination in employment laws." 29 C.F.R. § 860.120(g) (1982). In *Simpson*, the court concluded that "the Legislative history [of the ADEA] shows that Congress intended only to establish 'minimum' standards in the FADEA." 423 F.Supp. at 556. The court upheld the Alaska statute which extended protection against age discrimination to persons between the ages of 65 and 70, even though at that time the ADEA protected persons only through age 65. Similarly, we hold that the Maine statute is intended to supplement

federal law and is not preempted by the ADEA provisions.

We reject the defendant's contention that the goal of the ADEA to promote the employment of older workers is to be accomplished by affording preferential treatment. Congress clearly expressed the desire to promote the employment of older workers, but the means selected to achieve that goal are limited to the removal of the age consideration in employment decisions. The Fifth Circuit Court of Appeals has squarely addressed, and rejected, the defendant's proffered interpretation of congressional intent:

> The ADEA mandates that an employer reach employment decisions without regard to age, but it does not place an affirmative duty upon an employer to accord special treatment to members of the protected age group. The age of a "protected" job applicant or incumbent, then, is accorded neutral status under the ADEA, neither facilitating nor hindering his employment, his chances for advancement, or his exposure to demotion or discharge.

*Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982) (footnote omitted). *Accord Parcinski v. Outlet Co.,* 673 F.2d 34, 37 (2d Cir.1982); *Pirone v. Home Insurance Co.,* 559 F.Supp. 306, 311 (S.D.N.Y.1983); *Reilly v. Friedman's Express, Inc.,* 556 F.Supp. 618, 621 (M.D.Pa.1983).

Our interpretation of the Maine statute as age-neutral thus is completely consistent with the federal law's purpose to neutralize age as a factor, and discourage stereotyped views of the respective abilities and qualifications of workers of particular ages. "Where the statutes work in a complementary manner the case for preemption is weak." *Simpson,* 423 F.Supp. at 556, citing *New York State Department of Social Services v. Dublino,* 413 U.S. 405, 422, 93 S.Ct. 2507, 2517, 37 L.Ed.2d 688 (1973). It is entirely possible for employers to comply with both the federal and the state require-

ments by refraining from arbitrary age discrimination and by making employment decisions on the basis of qualification rather than age.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.