MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2015 ME 19
Docket:      Fed-14-263
Argued:      February 12, 2015
Decided:     March 3, 2015

Panel:        ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

BANKRUPTCY ESTATE OF JOHN B. EVEREST AND SUSAN E. EVEREST

v.

BANK OF AMERICA, N.A. et al.

GORMAN, J.

[¶1]  Pursuant to 4 M.R.S. § 57 (2014) and M.R. App. P. 25, the United States District Court for the District of Maine (*Hornby, J.*) has certified a question of state law for our review:

Where

> a. a junior mortgagee obtains a Maine District Court judgment of foreclosure and sale against a debtor/mortgagor (the senior mortgagee not being a party to the action) and the judgment provides that proceeds shall go first to the junior mortgagee, next to a still more junior mortgagee, and last to the debtor/mortgagor;
>
> b. the statutory equity of redemption expires on the junior mortgage foreclosure but the junior mortgagee fails to conduct a foreclosure sale pursuant to the judgment;
>
> c. the senior mortgagee in a separate action in Maine District Court seeks judgment of foreclosure and sale against the same debtor/mortgagor and also names the junior mortgagee as a

2

party-in-interest and serves both the mortgagor and the junior mortgagee;

d. the mortgagor and the junior mortgagee both fail to appear in the second action and are defaulted, and

e. the resulting judgment of foreclosure and sale (now final) provides that proceeds go first to the senior mortgagee, then to state tax authorities, and "Last, to the [debtor/mortgagor] or any other party appearing in this action," thereby not including the second mortgagee who did not appear,

f. the proceeds of such a sale will pay the full amount due to both the senior mortgagee and the state tax authorities, and still have excess remaining,

does the junior mortgagee who failed to appear in the second lawsuit and is not named as a distributee in the resulting judgment have any right under Maine law to excess proceeds from that foreclosure sale in any manner, either directly, or through a lien on the mortgagor's interest, or on some other basis; or do the excess proceeds belong exclusively to the debtor/mortgagor (now succeeded by the trustee in bankruptcy)? (If the junior mortgagee has a right to share in the proceeds, the nature of such a right will affect this federal court's determination whether the mortgagor/debtor's intervening bankruptcy filing has impaired that right, as it would, for example, if the only right were to a deficiency judgment on the underlying Note, as contrasted with a lien.)

We answer the certified question as follows: "The junior mortgagee who failed to appear in the senior foreclosure and was not named as a distributee in the resulting judgment does not have any rights to the excess proceeds from that foreclosure sale."

## I. BACKGROUND

[¶2] Susan E. Everest owned real estate in Kennebunk. *Howison v. Bank of Am., N.A.*, No. 2:14–CV–05–DBH, 2014 WL 2472117, at *1 (D. Me., June 2, 2014). On February 17, 2009, as holder of a second mortgage (the junior mortgage) that Everest granted on the premises, Bank of America filed a complaint in the Maine District Court to foreclose the junior mortgage (the junior foreclosure). *Id.* Bank of America named a third mortgagee as the party-in-interest and Everest as the defendant. *Id.* On May 10, 2010, the court (Biddeford, *Foster, J.*) entered a foreclosure judgment (the junior judgment) in favor of Bank of America and against Everest and the third mortgagee. *Id.*

[¶3] Just over two months later, on July 23, 2010, Everest filed a petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code with the Bankruptcy Court of the District of Maine, and William H. Howison (the Trustee) was appointed as trustee to the bankruptcy estate. *Id.* at *2. Neither the Trustee nor Everest ever exercised the equity of redemption on the junior foreclosure, and it has expired. *Id.* Bank of America failed to conduct a public sale of the mortgagor's equity of redemption pursuant to the junior mortgage. *Id.*

[¶4] On August 10, 2010, People's United Bank (Peoples United), the holder of a first mortgage (the senior mortgage), obtained from the Bankruptcy Court a relief from stay so that it could proceed with its own foreclosure action.

4

*Id.* On October 29, 2010, Peoples United began its foreclosure lawsuit (the senior foreclosure) in the Maine District Court, naming Maine Revenue Services and second mortgagee Bank of America as parties-in-interest and Everest as a defendant. *Id.* Despite being properly served with process, both Everest and Bank of America defaulted. *Id.* On March 22, 2011, the court (*Foster, J.*) entered a foreclosure judgment (the senior judgment) on Peoples United's mortgage. *Id.* That judgment stated that "the proceeds of a foreclosure sale of the real estate were to be paid (after deducting costs of the sale) first to Peoples United to the extent of its debt, then to Maine Revenue Services for tax liens, then to the 'Defendant or any other party appearing in this action.'" *Id.*

[¶5] In late June 2011, the Trustee learned of the imminent foreclosure sale from the senior foreclosure. *Id.* Although the Trustee had abandoned the bankruptcy estate's interest in the premises as of August 30, 2010, and the bankruptcy case had been closed since November 2, 2010, on July 7, 2011, the Trustee filed motions in the Bankruptcy Court to revoke his abandonment of the property and reopen the bankruptcy case. *Id.* The Bankruptcy Court reopened the case and, on July 20, 2011, granted the Trustee's motion to revoke the abandonment. *Id.*

[¶6] On July 21, 2011, Bank of America purchased Peoples United's interest in Everest's senior mortgage debt and obtained an assignment of the

Peoples United loan and senior mortgage documents and the senior judgment. *Id.* Peoples United postponed the foreclosure sale. *Id.*

[¶7] Next, the Trustee appeared in the senior foreclosure lawsuit by filing a motion to substitute himself for Everest. *Id.* The court granted that motion on August 25, 2011. *Id.*

[¶8] On September 29, 2011, Bank of America filed a motion seeking to substitute itself in place of Peoples United as the plaintiff in the senior foreclosure and, at the same time, moved for relief from the senior judgment pursuant to M.R. Civ. P. 60(b), with the stated intention of dismissing the senior foreclosure case. *Id.* The Trustee filed an objection to the Rule 60(b) motion, stating that "Bank of America had failed to provide evidence that would support its requested relief [pursuant to] Rule 60(b)." *Id.* In an order dated January 31, 2012, the court (*Janelle, J.*) granted the motion for substitution and denied Bank of America's Rule 60(b) motion, stating,

> [T]here is no rule providing that it is the prerogative of a party for whom judgment was entered to have that judgment set aside. Rather, . . . [Bank of America] must satisfy 60(b)(6)'s standard, which requires a showing of 'extraordinary circumstances.' [Bank of America] has not shown such extraordinary circumstances, and instead has predicated its motion on the conclusory assertion that setting aside the Foreclosure Judgment would serve the interests of justice. [Bank of America] has adduced no evidence to support that assertion.

6

*Id.* at *2-3. We dismissed Bank of America's untimely appeal from that order. *Id.* There has been no public sale pursuant to either foreclosure judgment. *Id.*

[¶9] On July 3, 2012, the Trustee filed a motion in the Bankruptcy Court seeking "authority to sell the premises free and clear of liens, claims, interests, and encumbrances." *Id.* Bank of America objected. *Id.* The Trustee then commenced an adversary proceeding "to determine the relative rights of the parties in the [p]roperty." *Id.* On August 15, 2012, the Bankruptcy Court consolidated the adversary proceeding with the sale motion. *Id.*

[¶10] In the Bankruptcy Court, the parties proceeded on a stipulated record. *Id.* For the purposes of those proceedings, the parties stipulated that "the value of the premises is $709,700, an amount sufficient to result in proceeds being paid to the Trustee for Everest's creditors if the [senior judgment] awards her any amount after Peoples United's secured obligation and Maine Revenue Services' tax lien are paid in full (but not enough to result in proceeds for the Trustee if Bank of America is paid)." *Id.* at *4. In addition, the parties agreed that under a sale pursuant to the senior foreclosure, "Maine Revenue Services will have priority to all but Peoples United's interest." *Id.* at *2 n.3.

[¶11] On November 12, 2013, the Bankruptcy Court (*Haines, J.*) announced its findings and, on November 13, 2013, entered judgment in favor of Bank of America. *Id.* at *4. The Trustee filed a timely notice of appeal. *Id.*

[¶12]  The United States District Court for the District of Maine (*Hornby, J.*) issued an order dated June 2, 2014, indicating that it disagreed with the Bankruptcy Court and intended to vacate the order and remand the case.  *Id.* at \*7.  Rather than doing so, however, the court determined that it would certify the question to us because the question is "determinative of the cause" in the present case and deals with an unsettled state law question.  *Id.*  The court certified the question, as stated in ¶ 1.

## II.  DISCUSSION

### A.    Acceptance of the Federal Question

[¶13]  "Title 4 M.R.S. § 57 authorizes, but does not require, us to consider a certified question of state law posed by a federal court in certain circumstances." *Fortin v. Titcomb*, 2013 ME 14, ¶ 3, 60 A.3d 765.  "We may consider the merits of a certified question from the United States District Court and, in our discretion, provide an answer if (1) there is no dispute as to the material facts at issue; (2) there is no clear controlling precedent; and (3) our answer, in at least one alternative, would be determinative of the case."  *Dinan v. Alpha Networks Inc.*, 2013 ME 22, ¶ 11, 60 A.3d 792.

[¶14]  We have stated that "wherever reasonably possible, the state court of last resort should be given opportunity to decide state law issues on which there are

8

no state precedents which are controlling or clearly indicative of the developmental course of the state law" because this approach

> (1) tend[s] to avoid the uncertainty and inconsistency in the exposition of state law caused when federal [c]ourts render decisions of [s]tate law which have an interim effectiveness until the issues are finally settled by the state court of last resort; and (2) minimize[s] the potential for state-federal tensions arising from actual, or fancied, federal [c]ourt efforts to influence the development of [s]tate law.

*Id.* ¶ 12 (quotation marks omitted).

[¶15]   Here, there are no material facts in dispute, there is no clear controlling precedent on point, and our answer to the certified question will also be determinative of the case because it will ultimately decide who is entitled to the proceeds of the senior foreclosure sale.   Therefore, we agree to consider this certified question.

B.     Junior Foreclosure

[¶16]   In order to answer the certified question, we must first classify the nature of the right Bank of America received from its junior foreclosure.   We review questions of law, including those certified to us by the federal court, de novo.   *Fortin*, 2013 ME 14, ¶ 7, 60 A.3d 765.   "In Maine, foreclosure is a creature of statute," *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 8, 96 A.3d 700, and 14 M.R.S. § 6321 (2014) governs the commencement of a foreclosure action. The relevant portion of section 6321 states:

*After breach of condition of any mortgage other than one of the first priority*, *the mortgagee* or any person claiming under the mortgagee *may proceed for the purpose of foreclosure by a civil action against all parties in interest, except for parties in interest having a superior priority to the foreclosing mortgagee*, in either the Superior Court or the District Court in the division in which the mortgaged premises or any part of the mortgaged premises is located. *Parties in interest having a superior priority may not be joined nor will their interests be affected by the proceedings, but the resulting sale under section 6323 is of the defendant or mortgagor's equity of redemption only.* The plaintiff shall notify the priority parties in interest of the action by sending a copy of the complaint to the parties in interest by certified mail.

(Emphasis added.)

[¶17] We have explained the nature of the equity of redemption as follows:

In ordinary cases the mortgagor conveys to the mortgagee the title to real estate as security for a debt. There remains in the mortgagor the right to pay the debt, and thereby redeem the property mortgaged. The process of foreclosure cuts off this right, and vests the title absolutely in the mortgagee. The same thing is true of a second mortgage, which is but a mortgage of the equity of redemption. The whole equity [of redemption] is conveyed to the mortgagee, the same as the whole title is conveyed to the first mortgagee. The right remaining in the mortgagor is a right to redeem the equity of redemption. *That right carries with it, as an incident to it, a right to redeem the first mortgage. Now when the second mortgagee forecloses the mortgagor, the whole equity of redemption vests in him, precisely as the whole estate vests in the first mortgagee after foreclosure, and he alone is entitled to redeem the first mortgage.*

*Smith v. Varney*, 309 A.2d 229, 232 (Me. 1973) (emphasis added) (quotation marks omitted).

[¶18]  When Bank of America obtained the junior foreclosure judgment on May 10, 2010, what it received was Everest's equity of redemption for the senior mortgage.  Bank of America did not sell this interest within the specified time period pursuant to 14 M.R.S. § 6323 (2014), nor did it appear in the senior foreclosure to assert its interest in redeeming the senior mortgage within the redemption period.  *Howison*, 2014 WL 2472117, at *1-2.  As we discussed almost ten years ago, in order to assert its rights, the junior mortgagee must appear in the senior foreclosure action:

> By the terms of section 6321 a sale of property that has been judicially foreclosed does not convey the premises free and clear of a recorded interest *if the holder of that interest is not made a party to the action*. Naming the junior mortgagee as a party in interest in a foreclosure action and serving of process provides notice of the imminent foreclosure proceedings.  *Once notified of the senior mortgagee's intention to foreclose against the property, the junior mortgagee has the opportunity to appear in the action and have the court determine, pursuant to section 6322 . . . the "order of priority and those amounts, if any, that may be due to other parties that may appear."*  Section 6322 also provides that after a hearing, if the court determines a breach of a condition in the primary mortgage has occurred, "a judgment of foreclosure and sale shall issue providing that if the mortgagor, his successors, heirs and assigns do not pay the sum that the court adjudges to be due and payable, with interest within the period of redemption, the mortgagee shall proceed with a sale as provided."  The same right of redemption is preserved to the junior mortgagee by section 6205.

*U.S. Dep't of Hous. & Urban Dev. v. Union Mortg. Co.*, 661 A.2d 163, 165-66 (Me. 1995) (emphasis added). In light of Bank of America's inaction, the question is whether it nonetheless retained any right to redemption.

C.    Senior Foreclosure

[¶19] On October 29, 2010, Peoples United, the holder of the senior mortgage, filed a foreclosure complaint pursuant to section 6321, which states in relevant part:

> *After breach of condition in a mortgage of first priority*, *the mortgagee* or any person claiming under the mortgagee *may proceed for the purpose of foreclosure* by a civil action *against all parties in interest* in either the Superior Court or the District Court in the division in which the mortgaged premises or any part of the mortgaged premises is located, regardless of the amount of the mortgage claim.

(Emphasis added.) Despite being properly served with process, Bank of America failed to appear in the action and was defaulted. On March 22, 2011, Peoples United was granted a foreclosure judgment pursuant to 14 M.R.S. § 6322 (2014), which states in relevant part:

> *[T]he court shall determine* whether there has been a breach of condition in the plaintiff's mortgage, the amount due thereon, including reasonable attorney's fees and court costs, *the order of priority and those amounts, if any*, *that may be due to other parties that may appear* and whether any public utility easements held by a party in interest survive the proceedings.

(Emphasis added.) As required by section 6322, the court established amounts and set priorities due. It ordered that the proceeds of the foreclosure sale were to be paid first to Peoples United, then to Maine Revenue Services, and, finally, to the "Defendant or any other party appearing in this action." *Howison*, 2014 WL 2472117, at \*2 (quotation marks omitted). Everest was the defendant in the senior foreclosure and Bank of America did not appear in the action. *Id.*

[¶20] "Upon expiration of the period of redemption, if the mortgagor or the mortgagor's successors, heirs or assigns have not redeemed the mortgage, any remaining rights of the mortgagor to possession terminate." 14 M.R.S. § 6323; *see also* 14 M.R.S. § 6205 (2014). Put another way,

> [w]hen that equity of redemption has been lost by the expiration of the statutory period, nothing remains in the mortgagor except the contingency that exceptional circumstances may exist which will entitle him to equitable relief. His legal title was conveyed when he executed the mortgage and his equitable title disappeared with the expiration of the period of redemption.

*Duprey v. Eagle Lake Water & Sewer Dist.*, 615 A.2d 600, 604 (Me. 1992) (quotation marks omitted).

[¶21] Starting on March 22, 2011, and ending on approximately June 20, 2011, the ninety-day period of redemption on the senior mortgage ran pursuant to 14 M.R.S. § 6322. Everest did not exercise her right of redemption during this time. *Id.* Bank of America also did not exercise any right of

redemption it might have had despite its default. *Howison*, 2014 WL 2472117, at *2. Pursuant to section 6323, when the period of redemption for the senior foreclosure expired, no equity of redemption remained with the property. Therefore, any rights Bank of America had in the property vis-à-vis the junior foreclosure disappeared.

[¶22] The remaining interests in the property are governed by the judgment of foreclosure in the senior foreclosure case. *See* 14 M.R.S. § 6324 (2014) (stating that after the expiration of the period of redemption foreclosure sale proceeds should be disbursed "in accordance with the provisions of the judgment."); *see also* Restatement (Third) of Prop.: Mortgages § 7.1 (1997) ("It is a fundamental principle of mortgage law that a valid judicial foreclosure of a senior mortgage terminates not only the owner's title and equitable redemption rights, but also all other junior interests whose holders were made parties defendant.").

D.     Conclusion

[¶23] By failing to appear in the senior foreclosure action, Bank of America jeopardized the rights it had obtained through the junior foreclosure. 14 M.R.S. § 6322. To the extent that Bank of America had any rights that survived the senior foreclosure judgment, those rights expired at the conclusion of the period of redemption. 14 M.R.S. § 6323.

14

[¶24]  Bank of America seems to suggest that the fact that Peoples United served the senior foreclosure complaint on a corporate representative instead of counsel somehow excuses its failure to appear in the senior foreclosure, and we should create an alternative procedure to allow Bank of America to exercise its expired right of redemption vis-à-vis the senior judgment.  There is simply no support in Maine law for this assertion, as the United States District Court points out.[1]  Bank of America had multiple opportunities to assert its interest in the senior foreclosure through appearance, a Rule 60(b) motion, and a direct appeal, and, in fact, it utilized, unsuccessfully, two of these options.

The entry is:

> We answer the certified question as follows: "The junior mortgagee who failed to appear in the senior foreclosure and was not named as a distributee in the resulting judgment does not have any rights to the excess proceeds from that foreclosure sale."

---

[1]  In its brief to us, Bank of America also argues that, as the now-senior mortgagee, it could allow itself, as the junior mortgagee and holder of the equity of redemption, to redeem the senior mortgage pursuant to 14 M.R.S. § 6323 (2014) which allows "[t]he mortgagee, in its sole discretion, [to] allow the mortgagor to redeem or reinstate the loan after the expiration of the period of redemption but before the public sale."  This question is not before us.  We have been called upon only to determine Bank of America's rights to "excess proceeds" from the senior foreclosure sale, and we do not reach the issue of Bank of America's rights pursuant to section 6323.

**On the briefs:**

Aaron P. Burns, Esq., and Joshua R. Dow, Esq., Pearce & Dow, LLC, Portland, for appellant William H. Howison, Chapter 7 Trustee of the Bankruptcy Estate of John B. and Susan E. Everest

Janet T. Mills, Attorney General, and Thomas A. Knowlton, Asst. Atty. Gen, Office of the Attorney General, Augusta, for appellee Maine Revenue Services

William A. Fogel, Esq., Portland, for appellee Bank of America N.A.

**At oral argument:**

Aaron P. Burns, Esq., for appellant William H. Howison, Chapter 7 Trustee of the Bankruptcy Estate of John B. and Susan E. Everest

Thomas A. Knowlton, Asst. Atty. Gen. for appellee Maine Revenue Services

William A. Fogel, Esq., for appellee Bank of America N.A.

U.S District Court for the District of Maine docket number 2:14-cv-05-DBH
FOR CLERK REFERENCE ONLY