MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 41
Docket:       Fed-16-31
Argued:       October 25, 2016
Decided:      March 7, 2017

Panel:        SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and <u>HUMPHREY</u>, JJ.

LORRAINE SCAMMAN et al.

v.

SHAW'S SUPERMARKETS, INC.

HUMPHREY, J.

[¶1] Pursuant to 4 M.R.S. § 57 (2016), the United States District Court for the District of Maine has certified to us the following question of state law:

> Is a claim for disparate impact age discrimination under the Maine Human Rights Act, 5 M.R.S.A. § 4572(1)(A), evaluated under the "reasonable factor other than age" standard, *see Smith v. City of Jackson*, 544 U.S. 228 (2005); the "business necessity" standard, *see Maine Human Rights Comm'n v. City of Auburn*, 408 A.2d 1253 (1979); or some other standard?

We answer the certified question as follows: "A claim for disparate impact age discrimination pursuant to the Maine Human Rights Act, 5 M.R.S. § 4572(1)(A), is evaluated according to the 'business necessity' framework."

I.  BACKGROUND

[¶2] The facts and procedural history are undisputed. Lorraine Scamman and others similarly situated (collectively, the plaintiffs) worked at

various Shaw's Supermarkets locations in Maine as full-time employees when their employment was terminated in 2012 as part of a reduction in force. Pursuant to a policy Shaw's implemented to carry out the reduction in force, only full-time employees were terminated. Because full-time employees were, on average, older than part-time employees, the reduction in force affected more older employees, including the plaintiffs, than younger employees. Shaw's explained that "business imperatives made it necessary . . . to cut costs by at least $550,000 per week, company-wide, and the reduction in force allowed it to do so."

[¶3] After the plaintiffs filed complaints with the Maine Human Rights Commission alleging age discrimination in violation of the Maine Human Rights Act (MHRA), 5 M.R.S. §§ 4551-4634 (2012),[1] a Commission investigator recommended that the Commission find reasonable grounds to believe that Shaw's had violated the MHRA by discriminating based on age pursuant to a disparate impact theory.[2] The investigator applied the three-step,

---

[1] Portions of the MHRA not relevant to the question presented in this case have been amended since the plaintiffs filed their claim. *See* P.L. 2015, ch. 457, §§ 1-4 (effective July 29, 2016) (codified at 5 M.R.S. §§ 4553(1-H), (9-E)(A), 4582-A(3), 4592(8) (2016)); P.L. 2015, ch. 102, § 9 (effective Oct. 15, 2015) (codified at 5 M.R.S. § 4594-D(11) (2016)); P.L. 2013, ch. 576, §§ 1-3 (effective Aug. 1, 2014) (codified at 5 M.R.S. § 4573(5), (6)(B), (7) (2016)).

[2] The investigator recommended that the Commission find no reasonable grounds to believe that Shaw's violated the MHRA based on a disparate *treatment* (i.e., "intentional discrimination")

burden-shifting "business necessity" framework to analyze the plaintiffs' allegations. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975); *Griggs v. Duke Power Co.*, 401 U.S. 424, 429-35 (1971); *Me. Human Rights Comm'n v. City of Auburn*, 408 A.2d 1253, 1264-68 (Me. 1979). The Commission voted unanimously to adopt the investigator's analysis and recommendations.

[¶4]   The plaintiffs then filed a complaint in the Superior Court (Androscoggin County), alleging unlawful employment discrimination based on age pursuant to the MHRA.[3]  *See* 5 M.R.S. § 4572(1)(A) (2016). After Shaw's removed the case to the United States District Court for the District of Maine, the court, upon a joint request by the parties, certified to us the question of what framework of proof applies to a claim of disparate impact age discrimination brought pursuant to the MHRA.  *See Scamman v. Shaw's Supermarkets, Inc.*, No. 2:15-cv-00295-JDL, 2016 U.S. Dist. LEXIS 10271 (D. Me. Jan. 26, 2016).

---

theory. *See, e.g.*, *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015); *Me. Human Rights Comm'n v. City of Auburn*, 408 A.2d 1253, 1261-62 (Me. 1979).

  [3] The MHRA prohibits recovery of attorney fees as well as compensatory and punitive damages under certain circumstances unless the plaintiff has filed a complaint with the Commission and one of several outcomes has resulted.  5 M.R.S. § 4622(1) (2016); *see Gordan v. Cummings*, 2000 ME 68, ¶ 11, 756 A.2d 942.  Those outcomes include the Commission's "[f]ail[ure], within 90 days after finding reasonable grounds to believe that unlawful discrimination occurred, to enter into a conciliation agreement to which the plaintiff was a party."  5 M.R.S. § 4622(1)(B).

4

[¶5]  Shaw's argues that a provision of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. §§ 621-634 (LEXIS through Pub. L. No. 114-328), known as the "reasonable factor other than age" (RFOA) defense, should apply to MHRA claims of disparate impact age discrimination.  The parties agree that if the RFOA defense applies pursuant to Maine law, Shaw's is entitled to a judgment as a matter of law on the plaintiffs' age discrimination claim.  They also agree that if the Commission was correct to apply the "business necessity" framework instead, further discovery will be necessary to develop the issues of (1) whether the reduction in force was actually motivated by a business necessity and (2) if so, whether less-discriminatory alternatives would have served those business needs.

## II.  DISCUSSION

A.    Acceptance of the Certified Question of State Law

[¶6]  We must first decide whether to accept and answer the certified question.  *See* 4 M.R.S. § 57; Alexander, *Maine Appellate Practice* § 25.1 at 194 (4th ed. 2013) ("Consideration of the merits of a certified question is not automatic.").

> [W]herever reasonably possible, the state court of last resort should be given opportunity to decide state law issues on which there are no state precedents which are controlling or clearly indicative of the developmental course of the state law because

this approach (1) tend[s] to avoid the uncertainty and inconsistency in the exposition of state law caused when federal [c]ourts render decisions of [s]tate law which have an interim effectiveness until the issues are finally settled by the state court of last resort; and (2) minimize[s] the potential for state-federal tensions arising from actual, or fancied, federal [c]ourt efforts to influence the development of [s]tate law.

*Bankr. Estate of Everest v. Bank of Am., N.A.*, 2015 ME 19, ¶ 14, 111 A.3d 655 (quotation marks omitted).

[¶7]  "Title 4 M.R.S. § 57 authorizes, but does not require, us to consider a certified question of state law posed by a federal court in certain circumstances."  *Id.* ¶ 13 (quotation marks omitted); *see* M.R. App. P. 25(a). We may consider the merits of a certified question when three criteria are met: "(1) there is no dispute as to the material facts at issue; (2) there is no clear controlling precedent; and (3) our answer, in at least one alternative, would be determinative of the case."  *Everest*, 2015 ME 19, ¶ 13, 111 A.3d 655 (quotation marks omitted).

[¶8]  In this case, all three requirements are met.  First, the material facts are undisputed.  Second, there is no clear controlling precedent— although we have made clear that the business necessity test applies in MHRA disparate impact cases based on sex discrimination, *see City of Auburn*, 408 A.2d at 1261-68, we have not yet expressly articulated what framework

6

applies in age-based disparate impact employment discrimination cases pursuant to the MHRA.[4] Finally, the plaintiffs agree that if the ADEA's RFOA defense does apply, Shaw's is entitled to a judgment as a matter of law. (A. 19.) In one alternative, therefore, our answer to the certified question would be determinative of the case. Because all three criteria are met, we elect to consider and answer the certified question.

## B. Legal Background

### 1. Disparate Impact Discrimination Claims

[¶9] The law recognizes at least two theories of liability upon which a plaintiff may prove a claim of employment discrimination: "disparate treatment" and "disparate impact." *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015); *City of Auburn*, 408 A.2d at 1261-63. In a disparate impact claim, such as the suit at issue in this case, the plaintiff alleges that he or she is a member of a protected group that is disproportionately affected by an employer's practice. *E.g.*, *City of Auburn*,

---

[4] In *Maine Human Rights Commission v. Department of Corrections*, we addressed a claim that an employer discriminated against the plaintiff on the basis of age and sex in violation of the then-existing version of the MHRA. 474 A.2d 860, 863 (Me. 1984). The plaintiff's claim included both disparate treatment and disparate impact theories. *Id.* at 863-64. Analyzing the disparate impact allegations, we concluded at the first step that the plaintiff could not meet her initial burden to make a prima facie showing of a disparate impact. *Id.* at 865-66. We did not address what framework of proof should apply to age discrimination claims specifically, nor did we discuss the ADEA or the RFOA defense. *See id.*

408 A.2d at 1264-68.  Statistical evidence is the "primary method" by which a plaintiff supports this type of claim.[5]  *Id.* at 1264.

2.      The Business Necessity Framework

[¶10]    The business necessity framework, pursuant to which the Commission analyzed the disparate impact claim in this case, consists of a three-step burden-shifting scheme:

> First, the plaintiff must establish a prima facie case of disparate impact by identifying a facially neutral practice that affects one group more harshly than another.  Second, if the plaintiff meets her burden in the first step, the defendant must present prima facie evidence that its practice is justified by a business necessity. Finally, if the defendant meets its burden in the second step, the plaintiff must present prima facie evidence that the defendant's proffered justification is pretextual or that other practices would have a less discriminatory impact.

*Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 24, 86 A.3d 52 (citations omitted).

[¶11]    The federal courts apply the business necessity framework to disparate impact claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000e to 2000e-17 (LEXIS through Pub. L. No. 114-328), which prohibits discrimination in employment on the basis of various

---

[5]  In a "disparate treatment" claim, also called an "intentional discrimination" claim, the plaintiff alleges that the employer engaged in an adverse employment action against him or her as an individual because of a characteristic that is protected by human rights legislation.  *See Abercrombie & Fitch*, 135 S. Ct. at 2031-32; *City of Auburn*, 408 A.2d at 1263.

8

characteristics not including age. *See* 42 U.S.C.S. § 2000e-2(a); *Albemarle*,

422 U.S. at 425; *Griggs*, 401 U.S. at 429-35. In *City of Auburn*, we applied the

business necessity framework to an MHRA claim of disparate impact sex

discrimination. 408 A.2d at 1264-68.

3.      The RFOA Defense

[¶12]  Although Title VII of the Civil Rights Act of 1964 prohibits

employment discrimination on the basis of various characteristics other than

age, the ADEA is the federal statutory scheme that proscribes *age*

discrimination in employment. *See* 29 U.S.C.S. § 623(a).[6]  The ADEA also

specifies, however, that "[i]t shall not be unlawful for an employer . . . to take

any action otherwise prohibited under subsection[] (a) . . . where the

---

[6] The ADEA provides, in relevant part:

**§ 623. Prohibition of age discrimination.**

**(a)** Employer practices. It shall be unlawful for an employer—

> **(1)** to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> **(2)** to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
> **(3)** to reduce the wage rate of any employee in order to comply with this Act.

29 U.S.C.S. § 623(a) (LEXIS through Pub. L. No. 114-328).

differentiation is based on reasonable factors other than age." 29 U.S.C.S. § 623(f)(1).  This is the RFOA defense.

[¶13]  In light of the RFOA defense, courts analyzing disparate impact age discrimination claims filed pursuant to the ADEA do not apply the business necessity framework.  *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 97-99 (2008).  Once the plaintiff has satisfied his or her burden to make out a prima facie case of disparate impact, there is no inquiry into whether the employer's facially neutral practice constitutes a business necessity or whether the employer could have accomplished the same goal by less-discriminatory means.  *See id.* at 95-100; *Smith v. City of Jackson*, 544 U.S. 228, 240, 243 (2005).  Instead, the burden shifts to the defendant to establish that the challenged practice is based on a reasonable factor other than age.  29 U.S.C.S. § 623(f)(1); *see Meacham*, 554 U.S. at 91-96; *Smith*, 544 U.S. at 243; 29 C.F.R. § 1625.7 (2016).  The United States Supreme Court has made clear that the existence of the RFOA defense in the ADEA means that "the scope of disparate-impact liability under [the] ADEA is narrower than under Title VII." *Smith*, 544 U.S. at 240; *see Meacham*, 554 U.S. at 102.

C.     Analysis

1.     Standards of Review

[¶14]   The question before us is whether the business necessity standard applies to disparate impact age discrimination claims filed pursuant to the MHRA, whether the ADEA's RFOA defense applies, or whether some other framework of proof applies.  To answer this question, we examine the terms of the MHRA in light of the legal background we have described.  When interpreting a statute, "we give effect to the Legislature's intent by considering the statute's plain meaning and the entire statutory scheme of which the provision at issue forms a part."  *Samsara Mem'l Trust v. Kelly, Remmel & Zimmerman*, 2014 ME 107, ¶ 42, 102 A.3d 757.  Only if the plain language of the statute is ambiguous will we look beyond that language to examine other indicia of legislative intent, such as legislative history.  *Zablotny v. State Bd. of Nursing*, 2014 ME 46, ¶ 18, 89 A.3d 143.  "Statutory language is considered ambiguous if it is reasonably susceptible to different interpretations."  *Id.* (alteration omitted) (quotation marks omitted).  "When a statute administered by an agency is ambiguous, we review whether the agency's interpretation of the statute is reasonable and uphold its interpretation unless the statute plainly compels a contrary result."  *Fuhrmann v. Staples the Office*

*Superstore E., Inc.*, 2012 ME 135, ¶ 23, 58 A.3d 1083 (quotation marks omitted).

2. Plain Language

[¶15] The MHRA provides: "The opportunity for an individual to secure employment without discrimination because of race, color, sex, sexual orientation, physical or mental disability, religion, age, ancestry or national origin is recognized as and declared to be a civil right." 5 M.R.S. § 4571 (2016). More specifically,

> It is unlawful employment discrimination, in violation of this Act, except when based on a bona fide occupational qualification . . . [f]or any employer to fail or refuse to hire or otherwise discriminate against any applicant for employment because of race or color, sex, sexual orientation, physical or mental disability, religion, age, ancestry or national origin . . . or, because of those reasons, to discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment . . . .

5 M.R.S. § 4572(1)(A).

[¶16] In a section describing what is "[n]ot unlawful employment discrimination," the MHRA expressly allows discrimination on account of age effected in order to (1) comply with "laws relating to the employment of minors" and (2) "[o]bserve the terms of any bona fide employee benefit plan" that, inter alia, complies with the ADEA. 5 M.R.S. § 4573(1-A) (2016).

Although section 4573(1-A) specifically refers to the ADEA in describing what is "[n]ot unlawful employment discrimination," that section contains no provision allowing an employer to take otherwise prohibited actions "where the differentiation is based on reasonable factors other than age."[7] *Cf.* 29 U.S.C.S. § 623(a), (f)(1). This suggests that the Legislature, while fully aware of the provisions of the ADEA, did not intend for the RFOA defense to be available pursuant to Maine law.

[¶17] On the other hand, the MHRA also does not affirmatively provide that the business necessity test applies to disparate impact age discrimination claims. Moreover, although the phrase "business necessity" appears in an MHRA provision describing a defense to claims where the plaintiff alleges certain types of discrimination against an individual with a disability, that section does not refer to claims based on other protected characteristics, such as age. *See* 5 M.R.S. § 4573-A (2016).[8] This could suggest a legislative choice

---

[7] Nor did the Legislature include any reference to an RFOA defense in a section entitled "Defenses," 5 M.R.S. § 4573-A (2016), or in any other portion of the MHRA.

[8] Title 5 M.R.S. § 4573-A provides, in relevant part:

**§ 4573-A. Defenses**

**1. General provisions.** It is a defense to a charge of discrimination under this subchapter that an alleged application of qualification standards, tests or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit *to an individual with a disability* has been shown to be *job-related and*

that the business necessity framework should apply *only* to disability-related MHRA claims.[9]  *See Musk v. Nelson*, 647 A.2d 1198, 1201 (Me. 1994) ("[A] well-settled rule of statutory interpretation states that express mention of one concept implies the exclusion of others not listed.").  Looking only at the statute's plain language, we therefore conclude that the statute is "reasonably susceptible to different interpretations," *Zablotny*, 2014 ME 46, ¶ 18, 89 A.3d 143 (alteration omitted) (quotation marks omitted), and is therefore ambiguous.

3.    Agency Deference

[¶18]  As we noted above, we give deference to an agency's reasonable interpretation of an ambiguous statute that it administers.  *Fuhrmann*, 2012 ME 135, ¶ 23, 58 A.3d 1083.  "We will not second-guess the agency on matters falling within its realm of expertise."  *Mulready v. Bd. of Real Estate*

---

*consistent with business necessity*, and such performance [cannot] be accomplished by reasonable accommodation, as required by this subchapter.

(Emphases added.)

 [9]  This is merely one possible interpretation of 5 M.R.S. § 4573-A, which renders the MHRA ambiguous as to the question presented in this case.  We do not mean to suggest that it is necessarily the "correct" interpretation.  Indeed, the statute refers to "a defense to a charge of discrimination *under this subchapter*," 5 M.R.S. § 4573-A(1) (emphasis added), which ostensibly includes non-disability-based discrimination claims, *see* 5 M.R.S. § 4572(1)(A) (2016).  And no indication exists in our case law to suggest that we have abandoned the business necessity framework for non-disability-based disparate impact claims since the enactment of section 4573-A in 1995.  *See Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 24, 86 A.3d 52 ("We evaluate claims of disparate impact in the employment context using [the] . . . three-step, burden-shifting [business necessity] analysis."); P.L. 1995, ch. 393, § 21 (effective Sept. 29, 1995); P.L. 1995, ch. 511, § 1 (effective Feb. 22, 1996).

14

*Appraisers*, 2009 ME 135, ¶ 13, 984 A.2d 1285 (quotation marks omitted); *see also Me. Human Rights Comm'n v. United Paperworkers Int'l Union*, 383 A.2d 369, 378 (Me. 1978).

[¶19]  The Maine Human Rights Commission administers the MHRA; it is required to investigate human rights violations and "recommend measures calculated to promote the full enjoyment of human rights and personal dignity by all the inhabitants of" Maine.  5 M.R.S. § 4566 (2016).  To achieve those goals, it has the power to hold evidentiary hearings, adopt rules and regulations, publish results of investigations, report to the legislative and executive branches, and do "everything reasonably necessary to perform its duties under" the MHRA.  5 M.R.S. § 4566(4), (7), (10)-(12).

[¶20]  Here, guided by *City of Auburn*, the Commission investigator unequivocally applied the business necessity framework to the plaintiffs' disparate impact age discrimination claims, and the Commission unanimously adopted the investigator's report.  The Commission has also made clear, in its amicus brief, its interpretation that the ADEA's RFOA defense does not apply to MHRA claims and that the business necessity framework does apply.  Contrary to what Shaw's contends, therefore, the Commission's interpretation is not indeterminate.

[¶21]     Nor  is  the  Commission's  interpretation  unreasonable.  *See Fuhrmann*,  2012  ME  135,  ¶  23,  58  A.3d  1083.    On  the  contrary,  its interpretation is supported by the MHRA's legislative history and content and by our existing case law.

[¶22]  The Legislature enacted the MHRA in 1971.  P.L. 1971, ch. 501, § 1.  At that time, both Title VII of the Civil Rights Act of 1964 and the ADEA were already in effect.  *See City of Auburn*, 408 A.2d at 1261 & n.10.  Although the  ADEA  contained  the  RFOA  defense,  29  U.S.C.S.  §  623(f)(1),  the  Maine Legislature did not include an RFOA provision in the MHRA.  The Legislature revisited the section describing "[n]ot unlawful employment discrimination" based  on  age  in  1977,  1979,  and  1995.    P.L. 1977,  ch. 580,  §  14;  P.L.  1979, ch. 350, §§ 2-3; P.L. 1995, ch. 393, § 15.  The 1979 amendment resulted in an express reference to the ADEA.  P.L. 1979, ch. 350, §§ 2-3.  The Legislature did not,  however,  enact  an  RFOA  provision  through  any  of  these  amendments. This history suggests that the Legislature has chosen—intentionally—not to limit the scope of its protections against age discrimination by providing for an RFOA defense.

[¶23]  The United States Supreme Court concluded in *Smith* that the legislative  history  of  the  ADEA  demonstrates  that  Congress's  decisions  to

16

enact the ADEA separately from Title VII and to provide for the RFOA defense were based in part on the notion that "age, unlike race or other classifications protected by Title VII, not uncommonly has relevance to an individual's capacity to engage in certain types of employment."[10]  544 U.S. at 240.  The legislative history of the MHRA does not suggest that the Maine Legislature agreed with that premise.  Instead, "against the background of prior federal antidiscrimination statutes," *City of Auburn*, 408 A.2d at 1261—namely, Title VII and the ADEA—the Legislature enacted a unitary antidiscrimination statute that is similar to Title VII but that includes age as a protected characteristic.  Unlike Congress, the Maine Legislature did not create a separate statutory scheme specific to age discrimination.  The MHRA's situs on the historical timeline of anti-discrimination legislation, considered alongside the absence of statutory language creating an RFOA defense, suggests that the Legislature did not intend for the scope of protection from age discrimination to be any different from the scope of protection from discrimination based on the other characteristics enumerated in the MHRA.[11]

---

[10]  The Supreme Court noted that "[d]uring the deliberations that preceded the enactment of the Civil Rights Act of 1964, Congress considered and rejected proposed amendments that would have included older workers among the classes protected from employment discrimination."  *Smith v. City of Jackson*, 544 U.S. 228, 232 (2005).

[11]  This interpretation is consistent with the notion that Congress intended the ADEA to serve as a "floor" of protection from age discrimination.  *Me. Human Rights Comm'n v. Kennebec Water Power*

[¶24] Shaw's argues that we should not "reject the use of the RFOA test because it is not included in the statute," where the MHRA also does not expressly codify the business necessity test for age-based discrimination claims. This argument relies on an inapt comparison because the two standards differ in nature. The RFOA defense is a creature of the ADEA statute; it is an affirmative defense, not a "test." *Meacham*, 554 U.S. at 91-95; 29 U.S.C.S. § 623(f)(1). It allows an employer that demonstrates certain facts to engage in "otherwise prohibited" conduct. *See Meacham*, 554 U.S. at 95 ("[A] defense to what is 'otherwise prohibited' is an affirmative defense, entirely the responsibility of the party raising it."). The business necessity test, conversely, is a judicially-created method of allocating the burdens involved in proving entitlement to relief on a claim that an employer's facially neutral practice has the consequence of discriminating on the basis of a protected characteristic. *See Albemarle*, 422 U.S. at 425; *Griggs*, 401 U.S. at 431-32; *City of Auburn*, 408 A.2d at 1261-62, 1264. That the statutory RFOA language—which already existed in the ADEA when the MHRA was enacted—is absent from the MHRA therefore sheds significantly more light on the Legislature's intent than does the absence of a codification of the business

---

*Co.*, 468 A.2d 307, 310 (Me. 1983) ("It is clear that Congress, in enacting the ADEA, intended to leave room for states to supply consistent legislation.").

necessity framework, which evolved in the courts after the MHRA was enacted.

[¶25] Our case law interpreting the MHRA also supports the Commission's interpretation. Shaw's argues that because the MHRA is "silent" on the test to be applied to the claim at issue, we should "look to the ADEA for interpretation." We have indeed looked to federal human rights legislation, and the cases interpreting it, for aid in interpreting the MHRA. *See, e.g.*, *City of Auburn*, 408 A.2d at 1261 ("[T]he Maine legislature—by adopting provisions that generally track the federal antidiscrimination statutes—intended the courts to look to the federal case law to provide significant guidance in the construction of our statute." (quotation marks omitted)); *Wells v. Franklin Broad. Corp.*, 403 A.2d 771, 773 n.4 (Me. 1979) ("[F]ederal cases construing the ADEA may aid our interpretation of the provision of the [MHRA] banning age discrimination in employment.").

[¶26] We have been careful, however, to specify that we will consider the construction of a federal counterpart to the MHRA only "when the federal and state laws are substantially identical." *Percy v. Allen*, 449 A.2d 337, 342 (Me. 1982); *see Me. Human Rights Comm'n v. Kennebec Water Power Co.*, 468 A.2d 307, 310 (Me. 1983) ("[W]here the provisions of the Maine statute

differ substantively from their federal counterparts, . . . deference to construction of the federal version is unwarranted."). In *Kennebec Water Power Co.*, the plaintiff, who was in his thirties, alleged that an employer discriminated against him on the basis of age when it hired older workers instead of him. 468 A.2d at 308. The trial court concluded that the ADEA's provision limiting its protection to individuals forty or older, which the MHRA does not contain, applied to MHRA claimants. *Id.* We disagreed, concluding that "in enacting the age discrimination prohibitions, the Legislature intended to *supplement* the federal ADEA." *Id.* at 310 (emphasis added). We "decline[d] to superimpose a limitation which does not appear on the face of the statute."[12] *Id.*

[¶27] Unlike the ADEA, the MHRA does not contain an RFOA affirmative defense. This is a substantive difference; the laws are not "substantially identical," *Percy*, 449 A.2d at 342. Thus, neither the text of the RFOA affirmative defense nor the federal cases applying that text provides helpful guidance for interpreting our statute. We therefore uphold the Commission's

---

[12] We held similarly in *Whitney v. Wal-Mart Stores, Inc.*, 2006 ME 37, ¶¶ 24-31, 895 A.2d 309, *superseded by statute as stated in Rooney v. Sprague Energy Corp.*, No. CV-06-20-B-W, 2007 U.S. Dist. LEXIS 78147, at *6-8 (D. Me. Oct. 19, 2007). In that case, we rejected an employer's argument that the MHRA's definition of "physical or mental disability" should be read to include the requirement of the federal Americans with Disabilities Act of a showing of a substantial limitation on a major life activity. *Id.* We declined to "in effect, amend the MHRA to include the limitation present in federal law but not in the Maine Legislature's enacted definition of 'disability.'" *Id.* ¶ 27.

reasonable determination that the business necessity test applies to disparate impact age discrimination claims brought pursuant to the MHRA. *See Fuhrmann*, 2012 ME 135, ¶ 23, 58 A.3d 1083.

The entry is:

> We answer the certified question as follows: "A claim for disparate impact age discrimination pursuant to the Maine Human Rights Act, 5 M.R.S. § 4572(1)(A), is evaluated according to the 'business necessity' framework."

Jeffrey Neil Young, Esq., Carol J. Garvan, Esq., and Max I. Brooks, Esq. (orally), Johnson, Webbert & Young, LLP, Augusta, for appellant Lorraine Scamman et al.

K. Joshua Scott, Esq. (orally), Jackson Lewis P.C., Portsmouth, New Hampshire, for appellee Shaw's Supermarkets, Inc.

Barbara Archer Hirsch, Esq., Maine Human Rights Commission, Augusta, for amicus curiae Maine Human Rights Commission

Richard L. O'Meara, Esq., Murray Plumb & Murray, Portland, for amicus curiae AARP